# Commonwealth *v.* De Marzo, Appellant.

*Criminal law—Murder—Insanity—Maniacal outburst—Evidence—Charge.*

On the trial of an indictment for wife murder the prisoner is not entitled to an instruction to the effect that if he killed his wife under the influence of a maniacal outburst he should not be convicted, although he knew his act was unlawful, and knew the difference between right and wrong, if there is not the slightest evidence of a passionate outburst of any kind in his conduct either at two interviews with his wife on the day of the killing, or immediately before or after the killing, or from that time until he was placed in jail.

Argued Jan. 11, 1909. Appeal, No. 352, Jan. T., 1908, by defendant, from judgment of O. & T. Lackawanna Co., Oct. T., 1908, No. 10, on verdict of guilty of murder of the first degree in case of Commonwealth v. Nicholas De Marzo. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder of the prisoner's wife. Before EDWARDS, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[I ought to state to you that the test of the defendant's responsibility in this case is his ability to distinguish between right and wrong. When he shot his wife did he then know that

he was committing an unlawful act? Did he have the capacity to understand the consequences of his act? Did he know that his act was wrong and criminal? If he did he is responsible.] [1]

[Every fact of whatsoever kind disclosed by the evidence must be weighed by you in order to determine the defendant's state of mind and to ascertain whether his act was intentional and premeditated, or whether it was the product of a diseased mind unable to distinguish between right and wrong.] [2]

[From the very nature of the mental disease there can be no grading of it by degrees so as to accord with a degree in crime. In other words, if the defendant is not guilty of murder of the first degree because he was insane, he is not guilty of murder of the second degree, or of any other degree of crime. Either the offense of the defendant is wholly excused because the jury is satisfied by the preponderance of evidence of his irresponsibility, or he is guilty, because the evidence fails to so satisfy you.] [3]

[The commonwealth claims that the defendant is guilty of murder of the first degree and of nothing else, and it is for you, gentlemen of the jury, to decide whether the commonwealth has maintained its contention beyond a reasonable doubt.] [4]

[If the killing is the result of a fully formed purpose to take life and the act is done deliberately, the crime is murder of the first degree. In other words, if there is an intention to kill, deliberately formed and executed, it is murder of the first degree.] [5]

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Errors assigned* were above instructions, quoting them.

*M. J. Martin*, with him *Geo. H. Rice*, for appellant.

*Joseph O'Brien*, District Attorney, for appellee.

Per Curiam, March 1, 1909:

The only defense set up at the trial was that of insanity, and

all of the assignments of error pressed relate to the charge on that subject. The instruction in the charge was that the test of the appellant's responsibility was his power to distinguish between right and wrong; that all the facts disclosed by the evidence were to be taken into consideration to determine his state of mind and to ascertain whether his act was intentional and premeditated, or whether it was the product of a diseased mind unable to distinguish between right and wrong. It is argued that in addition to the instructions given the jury should have told that, if the appellant killed his wife while under the influence of a maniacal outburst, he should not be convicted, although he knew his act was unlawful and knew the difference between right and wrong.

The power to distinguish between right and wrong is not always the only test of responsibility, since this power may exist without the power of self-control. And there was some expert testimony to the effect that the appellant was suffering from a species of latent insanity, a characteristic manifestation of which is a sudden, irresistible, maniacal outburst of temporary duration. There was not, however, the slightest evidence that his conduct, at the time of the murder or at any time before or after, suggested a lack of control because of mental disease, or that his mind was dominated by an irresistible impulse. The facts are very clearly stated in the following extract from the opinion of the learned judge in refusing a new trial: "In the history of defendant's life since he came to this country, particularly since he married the woman he killed, there was nothing to indicate that he was the subject of sudden maniacal outbursts. And his conduct during the whole of the day on which the homicide occurred shows that he was cool, rational and in full control of his acts. The evidence shows that he had been in the habit of locking his young wife in the house. On the morning of the day of the killing he went to his work as usual. About ten o'clock he was informed that his wife had left his house, and had gone to her sister's house. He left his work then and walked home. He changed his clothes, took the revolver out of a bureau drawer, put it in his pocket and went to seek his wife. Finding her in her sister's

house he had an interview with her which lasted from a quarter to a half an hour. He tried to prevail on her to return home. She refused, giving as a reason that it was not safe for her; that he had beaten and abused her and had threatened to shoot her more than once. He then left and came back in the afternoon, when he had another interview with his wife similar in character to the first. At the end of this interview, when the sister had just stepped out of the door, he coolly took the revolver out of his pocket and shot his wife. He then went back to his own house and put the revolver in the pocket of another coat. He was soon arrested and his actions from that time until he reached the county jail were that of a person who knew full well what he had done and why he did it. There was not the slightest indication of a passionate outburst of any kind in his conduct, either at the morning interview, or at the afternoon interview, or immediately before or after the shooting or from that time until he was placed in jail."

The instruction given was all that the facts developed at the trial called for. The appellant, however, had the advantage, in the answers to special requests for charge, of full and admittedly accurate instructions on the want of mental control.

The judgment of the court is affirmed, and the record is remitted to the court of oyer and terminer of Lackawanna county that the judgment may be carried into execution according to law.