quired to carry out and give full and complete effect to this Decree.

6. The Court shall and does retain jurisdiction of this cause, to carry out and enforce this Decree.

7. The plaintiff shall have such other, different and further relief as the carrying out and giving effect to this decree may require.

## UNITED STATES ex rel. WING v. COMMONWEALTH et al.

### No. 162.

United States District Court,
W. D. Pennsylvania.

March 31, 1950.

See also 86 F.Supp. 485.

Jacob Shulgold, Pittsburgh, Pa., for petitioner.

GOURLEY, District Judge.

This is a habeas corpus proceeding by the United States of America on relation of George Wing against Stanley P. Ashe, Warden, Western State Penitentiary, et al.

George Wing, the petitioner, on November 12, 1929 being arraigned on a charge of murder, pleaded guilty to an indictment returned at No. 1 November Term, 1929, Court of Quarter Sessions of Erie County, certified to No. 1 November Term, 1929, Court of Oyer and Terminer of Erie County, Pennsylvania.

Petitioner was charged with the murder of George Lavern Ormsbee, an infant child, who came to his death on August 31, 1929 as a result of a gunshot wound.

Hearing was held on November 25, 1929 in order to determine the degree of guilt. After the taking of extensive testimony offered by both the Commonwealth and the petitioner, the trial judge adjudicated the petitioner guilty of murder in the first degree and determined the penalty to be life imprisonment. On November 27, 1929 the trial court sentenced the petitioner to the Western State Penitentiary for and during the term of his natural life.

### History of Crime.

In the early morning of August 31, 1929 petitioner left the home of his mother, near Ormsbee Crossing, Concord Township, Erie County, Pennsylvania, walked to the City of Corry, cashed a pay check, then went to a hardware store and bought a twenty-two calibre Stevens single shot rifle, a box of long cartridges and a piece of stout rope

about ten feet long. Later he was seen walking down the railroad track toward the neighborhood where both he and his sister lived. In his hand he had a package which looked as if it might contain a rifle. He then hid in a clump of bushes on the north side of the highway, near the railroad, a short distance from his sister's home. Shortly thereafter Harriet and Clara Ormsbee and the child walked down the road past the defendant. When they were about twenty-five feet away he aimed at his sister and fired the first shot, wounding her in the arm. She dropped a kettle she was carrying, turned about, picked up the child, and ran past the ambush of the defendant whereupon he reloaded the rifle and fired the fatal shot. The child died instantly. The place where the shots were fired was later disclosed by petitioner to the state police officers and one empty shell, of the kind used in the shooting, was found. After the shooting petitioner fled to a nearby woods and there attempted to commit suicide but succeeded only in inflicting a gunshot wound in his neck. When accosted by the state police officer he started to flee but was stopped. He first denied having a gun but later disclosed to the officer where the gun and cartridges were hidden in nearby underbrush. At the scene of the shooting the paper in which the gun had been wrapped by the clerk in the hardware store was found. The rope, bought at the same time, was found in a nearby barn, knotted and tied in a noose. Petitioner was immediately taken to Corry and there made a statement in writing and a second statement was made in Erie. Both of these statements were made under circumstances which indicate that they were wholly voluntary after the petitioner had been warned as to his rights.

Petitioner contends that he was denied rights given to him under the Constitution of the United States in the following particulars:

1. That he was denied the right to trial by jury.

2. That he did not enter a plea of guilty to the indictment in which he was charged with murder, but only intended to enter a plea of guilty to the crime of involuntary manslaughter.

3. That he was mentally incompetent to understand the nature of his acts—

(a) at the time of the commission of the crime, and

(b) at the time the alleged plea of guilty was purported to have been made.

■ In passing upon the application for writ of habeas corpus in this court, judicial knowledge will be taken of all records and proceedings in the Courts of Quarter Sessions and Oyer and Terminer of Erie County, Pennsylvania, and the Supreme Court of the Commonwealth of Pennsylvania.

I have also taken judicial knowledge of the records as they exist in the Superior Court of the Commonwealth of Pennsylvania, which have been marked as Court Exhibit "A".

The other records referred to have been made a part of the record in this proceeding and are marked as follows:

1. Commonwealth's Exhibit No. 1—Statement by petitioner before Justice of Peace Porter at Corry, Pa., Aug. 31, 1929 (photostatic copy).

2. Commonwealth's Exhibit No. 2—Statement by petitioner given at Police Station, Erie, Pa., August 31, 1929 (photostatic copy).

3. Commonwealth's Exhibit No. 3—File—docket entries and various papers from file in Erie County Court of Oyer and Terminer, No. 1 November Sessions, 1929, Commonwealth of Pennsylvania v. George Wing (certified and photostatic copies).

4. Court Exhibit A—correspondence between the petitioner and Prothonotary of Superior Court of Pennsylvania.

The question as to whether or not the petitioner has exhausted his remedies existing under the state law is not troublesome for the reason that the petitioner at no time filed a proceeding in the nature of a habeas corpus action before any state court.

It, therefore, becomes the obligation of the Federal District Court to proceed with a full hearing to determine whether any

rights of petitioner under the Constitution of the United States have been denied.

1. Was the Petitioner Denied the Right to Trial by Jury?

Counsel representing the petitioner were very thorough, learned and experienced in the trial of criminal cases. Counsel advised the petitioner it would be to his best interests to enter a plea of guilty rather than stand trial. Counsel fully explained the result of the entry of the plea of guilty, and that testimony would be taken by the court to determine the degree of murder. After the plea of guilty was entered, the trial judge interrogated the petitioner as to whether he understood the nature of the plea which was entered and the petitioner advised that he did.

At no time, during the hearing, when testimony was taken to determine the degree of murder did the petitioner raise any question or express a desire to withdraw his plea of guilty.

The petitioner never expressed dissatisfaction or disapproval of his legal counsel, and was aware and informed at the time the plea of guilty was entered that his counsel was prepared to proceed with trial if a "not guilty" plea were entered.

During the hearing before the trial judge on the question of degree of guilt, the petitioner consulted with his counsel and suggested from time to time questions to be asked or inquiry to be made of witnesses who were called to testify.

▇ I cannot conclude that the petitioner was denied a right to trial by jury. In fact, I believe he expressly, with full and complete understanding, waived his right to a jury trial.

2. Did the Petitioner Enter a Plea of Guilty to the Murder Indictment Generally?

There is absolutely no basis for the contention of the petitioner that he intended to enter a plea of guilty only to the crime of involuntary manslaughter. No useful purpose would be gained by making reference to the detailed facts and circumstances which lead to this conclusion.

3. Was the Petitioner Mentally Incompetent to Understand the Nature of His Acts—

(a) at the time of the commission of the crime, and

(b) at the time the plea of guilty was purported to have been made?

▇ In order for insanity to be a legal defense to the commission of a crime there must be:

(a) Such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong; or

(b) he must be unconscious and unaware at the time of the nature of the act he is committing; or

(c) where, though conscious of it and able to distinguish between right and wrong and know that the act is wrong, yet his will, or the governing power of his mind, has been otherwise than voluntarily, so completely destroyed that his actions are not subject to it, but are beyond his control. Davis v. United States, 165 U.S. 373, 17 S. Ct. 360, 41 L.Ed. 750; Commonwealth v. Keill, 362 Pa. 507, 67 A.2d 276.

▇ Even if the crime were committed under the influence of a maniacal outburst, if the crime violator knew the difference between right and wrong, and that the act was unlawful, said person is responsible for his criminal acts. Commonwealth v. De Marzo, 223 Pa. 573, 72 A. 893.

▇ The court before whom a defendant is arraigned on an indictment for a crime has a wide discretion in determining whether or not he is in a fit mental state to be tried, and the law does not make it obligatory on the judge to order a preliminary inquest to adjudicate the defendant's sanity or insanity. The entry of a plea of guilty by a defendant to a criminal indictment is an implied admission of the defendant's sanity. Commonwealth ex rel. Smith v. Ashe, Warden et al., 364 Pa. 93, 71 A.2d 107.

▇ The trial judge was definitely of the opinion that the petitioner understood and was fully aware of the nature of the offense which he committed on August 31,

1929, and at the time a plea of guilty was entered on November 12, 1929. This construction is amply supported by competent medical testimony. The trial judge properly considered the medical testimony in reaching a conclusion that the degree of punishment should be limited to life imprisonment rather than the imposition of the death sentence.

Under these circumstances the existence of every fact to show beyond a reasonable doubt the establishment of the crime charged has been proved. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499.

The court cannot substitute its judgment for that of the judge who heard the witnesses and who was solely qualified to pass upon the credibility.

Where a plea of guilty is entered to an indictment charging murder, and the trial judge adjudges the accused guilty of murder in the first degree and finds under all the testimony that the accused was sane at the time he committed the crime, the sentence imposed by the trial judge becomes final and conclusive. Commonwealth v. Smith, 362 Pa. 222, 66 A.2d 764.

I am satisfied the petitioner was fully aware of his acts and deeds, both when the crime was committed and when the plea of guilty was entered to the murder indictment.

There is nothing in the record in the state court which would impeach the fairness and temperateness with which the trial judge approached his most unpleasant task. This is not such a case as would require the federal courts to interfere with the administration of justice in the state courts and discharge the petitioner through a habeas corpus proceeding. The adjudication by the state court that the petitioner was guilty of murder in the first degree and the sentence imposed of life imprisonment was not contrary to the law of Pennsylvania, nor did it deny the petitioner any rights given to him by the Constitution of the United States. The imprisonment is, therefore, proper.

The petitioner has filed several applications for parole but for reasons which are easily understood the applications have been denied. A petition for a writ of habeas corpus is not the proper procedure for obtaining an adjudication of the question whether or not the petitioner is eligible for parole. Commonwealth ex rel. Sherman v. Burke, Warden, 364 Pa. 198, 70 A.2d 302.