THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FUN-DADOR RODRÍGUEZ RIVERA, Defendant and Appellant.

No. 16386. Decided December 21, 1961.

*Carlos E. Colón* and *Santos P. Amadeo* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

An amended information of murder in the first degree was filed against Manuel Hernández Sierra and appellant Fundador Rodríguez Rivera, because on March 12, 1955, in Utuado, said defendants, unlawfully, wilfully and with criminal intent, *"acting jointly and in common agreement,"* with malice aforethought, deliberation and with the firm and determined intent of unlawfully killing a human being, revealing a perverse and malignant heart, *"upon perpetrating burglary in the first degree within the residence of Mary L. Fordham widow of Boerman,"* assaulted and battered said lady with a clock, a blunt instrument, producing serious fractures and injuries which caused her death. The jury found appellant guilty of murder in the first degree and he was sentenced to life imprisonment.

On appeal he makes the following assignments of error: (1) that the trial court committed error in not instructing the jury that Manuel Hernández Sierra was appellant's accomplice and therefore the latter could not be convicted unless his testimony was corroborated; (2) the court erred in failing to instruct the jury what constitutes the crime of burglary since he was accused of murder while committing said crime; (3) in not instructing the jury as to murder in the second degree; and (4) that he was deprived of the right

to an impartial trial because of the unexpected testimony of codefendant Manuel Hernández Sierra.

As to the first assignment of error the trial court instructed thus: "The other testimony we have is that of Manuel Hernández. First, I want to give you another instruction. According to our laws a codefendant cannot be found guilty of a crime on the sole testimony of his accomplice. In a case where such testimony appears in which it is sought to throw the guilt on a person with whom he committed the criminal offense, unless it is corroborated by another testimony, the accomplice's testimony, I repeat, is not sufficient to convict him."

In *People* v. *Rivera*, 79 P.R.R. 783 (1957), it was assigned as error that the judge instructed the jury that it had power to determine whether or not a witness in that case was an accomplice of the defendants; and failed to define to the jury what constitutes an accomplice for the purpose of determining whether the testimony of the latter needed corroboration or not. Upon considering those contentions this Court stated: "the error committed in instructing the jury that it had power to determine whether or not Guillermo Hernández Vega was an accomplice, and the error committed in failing to instruct the jury what is an accomplice, are sufficient to reverse the judgment and order a new trial. *People* v. *Flecha*, 70 P.R.R. 651, 655 (De Jesús) (1949). It clearly appears from the evidence that Guillermo Hernández Vega was an accomplice. There was no conflict as to his condition as such. In this case it was incumbent on the judge to decide that the testimony was given by an accomplice which needed corroboration, and instruct the jury to this respect, and not leave it to the jury to determine whether or not the testimony was that of an accomplice and whether or not it needed corroboration. *It would have sufficed to describe the witness as a codefendant in the common design of all the defendants charged with an attack against the Arecibo Police Head-*

*quarters."* (Citations follow.) (Emphasis ours.) **We** ordered a new trial.

█ In the case at bar the situation is distinguishable. It does not concern, as in the *Rivera* case, the testimony of a witness who was not being tried, rather it concerns the testimony of one of the codefendants, of a person who it had been stated in the information had acted jointly and in common agreement with the appellant. It was obvious from the commencement of the trial with both defendants sitting before the court and while the information was read to the jury, as well as throughout the entire trial when both oral and documentary evidence was introduced, that the codefendant who testified was an accomplice of the crime committed. This fact was well known to the jury. Although the trial court did not say in so many words that the codefendant was an accomplice, it assumed that fact from the obvious situation of the case to everyone, including the jury, in instructing that a *"codefendant"* could not be found guilty on the sole testimony of *his* accomplice, and that said testimony needed corroboration. On the other hand, unlike the *Rivera* case, the court in the present case gave ample instructions of law as to what constitutes an accomplice—§ § 35 and 36 of the Penal Code. This case is also distinguished in the important fact that the trial court did not leave it to the jury to determine whether or not the codefendant who testified at the trial was an accomplice or not as happened with the witness in the above-mentioned case. The present situation goes beyond the degree of sufficiency established in the decision of *Rivera, supra,* in the portion copied in italics. Irrespective of the technical aspect presented, the record does not leave the slightest doubt that the testimony of codefendant Hernández Sierra was corroborated even beyond the requirements of our rule of corroboration.

We will dispose jointly of the second and third assignments of error, because they present questions which are

interrelated. In this case murder was charged in *statutory* first degree, known in the Anglo-Saxon law as *"felony murder"*, death committed in the perpetration of burglary. Section 201 of the Penal Code, English version.[1]

Not long ago, in *People* v. *Palóu*, 80 P.R.R. 351 (1958), a case in which several deaths occurred as a result of arson in a dwelling house, we had occasion to refer to this kind of murder. See: *People* v. *Acosta*, 11 P.R.R. 240 and *People* v. *Alméstico*, 18 P.R.R. 314, and other cases cited. In *Palóu* we stated at p. 369, "Palóu's participation in the fire having been established as a matter of fact, *the offense of arson must be proved* under the circumstances of this case, *in all its essential elements*, to sustain the charges of murder in the first degree." (Citations.) (Emphasis ours.) Further on, at pp. 370–71, "Despite all this, it having been established that the appellant perpetrated arson, the death of the persons who inhabited the upper stories of the building resulting, as stipulated, from the very extensive and deep burns caused by the fire, constitutes *first-degree murder by force and operation* of § 201 of the Penal Code." (Emphasis ours.) See the historical review and comments on *"felony murder"* under footnote 9 on said page.

As it may be observed, this is a situation in which an essential ingredient of a crime consists at the same time of the commission or attempt to commit another crime. In that case, the death is a fortiori murder in the first degree even if there did not exist any separate evidence of deliberation and premeditation. *People* v. *Palóu, supra* at 359.

█ The definition of burglary, an essential element in this case of murder in the first degree, constitutes a legal concept which is reached by establishing certain specific

---

[1] "All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, *burglary* or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

acts. Therefore, it was necessary and imperative for the court to instruct the jury what constitutes this crime at law, in such a manner that the jury, with the evidence before it, could determine whether the offense of burglary was committed upon causing death, and bring a verdict of murder in the first degree and in no other degree or lesser offense included. The instruction in question was even more necessary considering that burglary is one of those crimes which require a *specific intent as a matter of fact*, and the general intent of § 12 of the Penal Code is not sufficient.[2]

■ The trial court instructed the jury that they would not receive instructions on murder in the second degree because there was no basis in the evidence to produce that instruction. The court was correct since the crime involved was in the first degree by force of law. To give such an instruction would have been more of an error. *Cf. Green* v. *United States*, 218 F.2d 856 (C.A. D.C.). Nevertheless, there have been similar cases in which second degree instructions have been given, and even when the court did not commit error in refusing them, they might have, if given, mitigated the prejudicial effect in failing to give those concerning burglary. In *The People* v. *Rivera, alias Panchito*, 9 P.R.R. 454 (1905) where second degree murder and homicide instructions were also given, we upheld conviction and, although by way of dictum, we said at p. 467: "Inasmuch as the information charged and the facts, as far as they can be ascertained showed that the murder of Severo Lorenzo was committed in the perpetration of robbery, the crime of robbery was also explained by the court to the jury. Besides it was this circumstance which was relied upon to render the killing murder in the first degree." The failure to define burglary to the jury and to give instructions as to the

---

[2] "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, barn, stable, outhouse, or other building, tent, vessel, or car, *with intent* to commit grand or petit larceny, or any felony, is guilty of burglary."

same was a serious prejudicial error. *Cf. State* v. *Butler*, 143 A.2d 530, 549–551 (N.J. 1958) ; *People* v. *Coefield*, 236 P.2d 570 (Cal.) ; *People* v. *Ballentine*, 246 P.2d 35 (Cal.) ; *People* v. *Morlock*, 292 P.2d 897 (Cal.). This error requires a new trial.

The People invokes, by analogy, the case of *People* v. *Cirino*, 69 P.R.R. 488. This case was a charge for murder in the *second* degree, not in the first, in which death resulted from a criminal abortion. We said it was unnecessary to give instructions on criminal abortion. The difference between the *Cirino* case and the one at bar is clear. The offense of criminal abortion is not an essential element of murder in the second degree, which is the unlawful death for an act committed with malice aforethought. In that case the act was an abortion but could have been any other. In this case, as we have said, the crime of burglary was an essential element of felony murder and the jury had to determine, with the corresponding instructions of law, whether the evidence presented to them showed the commission of that crime.

There will be a new trial.