# DAVIS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 577. Submitted January 19, 1897. — Decided February 15, 1897.

Although there is no appearance for the plaintiff in error, yet, as this is a criminal case, involving the punishment of death, the court has carefully examined the record, to see that no injustice has been done the accused.

After a witness, qualified as an expert, has given his professional opinion in reference to that which he has seen or heard, or upon hypothetical questions, it is ordinarily opening the door to too wide an inquiry to interrogate him as to what other scientific men have said upon such matters, or in respect to the general teachings of science thereon, or to permit books of science to be offered in evidence.

An expert on behalf of the defence in cross examination was asked : " You

think from your experience with him, from your conversation with him, that he killed the man because he threatened his life ? " An objection to the question being overruled he answered : " Well, in part; and because he thought his own life was in danger, and because he thought he had the right to destroy this menace to his own life." *Held*, that the objection was properly overruled.

The trial court charged : " The term ' insanity' as used in this defence means such a perverted and deranged condition of the mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing, or where, though conscious of it and able to distinguish between right and wrong and know that the act is wrong, yet his will, by which I mean the governing power of his mind, has been otherwise than voluntarily so completely destroyed that his actions are not subject to it, but are beyond his control." *Held*, that this was not prejudicial to the defendant.

Under the circumstances the court did right to refuse the instruction asked for with reference to manslaughter.

On October 13, 1894, defendant was indicted in the Circuit Court of the United States for the Western District of Arkansas for the crime of murder. A trial being had he was found guilty and sentenced to be hanged. This judgment was reversed by this court on the ground of error in the instructions of the court in respect to the matter of insanity. *Davis v. United States*, 160 U. S. 469. A second trial was had, which resulted in a similar sentence, to review which this writ of error has been sued out.

The circumstances of the homicide were briefly these, and in respect to them there was no dispute : The deceased and defendant had a misunderstanding in regard to the making of a sugar cane crop which the defendant was making for the deceased on land rented from him. About a week thereafter, and on September 18, 1894, the defendant took a gun and slipped up to near where the deceased was at work picking cotton, shot and killed him while so at work, and while unarmed and doing nothing towards harming defendant. He then ran away from the place where the shot was fired to the nearest town and surrendered himself to the officers, telling them he had killed the deceased, and detailing the circumstances.

No appearance for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

Mr. Justice Brewer, after, stating the case, delivered the opinion of the court.

The principal defence presented on this trial, as on the former, was insanity. Indeed, the circumstances of the homicide were such as to preclude any other. The deceased, peacefully at work, unarmed and making no demonstrations against the defendant, was shot and killed by the latter, and this in consequence of a dispute more than a week old. The act thus done, if done by a man fully responsible for his actions, was unquestionably murder in the first degree. Counsel for defendant have filed no brief and made no argument. With the trial in the Circuit Court, suing out a writ of error and filing assignments of error, their connection with the case ceased. If this were a civil case, undoubtedly, under Rule 16 of this court, the writ of error would be dismissed, or the record opened and an affirmance ordered without examination. And if it were a criminal case of small importance it is probable that the same disposition would be made, but as the offence charged, and of which the defendant was convicted, is murder, and the punishment death, we have felt it to be our duty to carefully examine the record, with all the assignments of error, in order to see that no injustice has been done the defendant. In this examination we have had the assistance of a brief prepared by the Assistant Attorney General, in which the views of the government are fully presented.

The first nine assignments of error refer to matters transpiring in the introduction of testimony. Some of the questions presented by those assignments have been already determined by this court, in prior cases and need not, therefore, be noticed in this opinion. The others are as follows: Several lay witnesses were called who testified as to their acquaintance with the defendant and their opinion as to his sanity. He also called two medical witnesses, Dr. J. C. Amis and Dr. T. J. Wright, each of whom had seen him after his arrest and dur-

ing his confinement in jail, and had observed his conduct, actions and demeanor. While the record does not contain a recital of all the testimony of these witnesses enough is disclosed to show that the court permitted full inquiry of each as to what he had seen or heard of the actions and sayings of defendant; permitted each also to give fully his opinion as to the mental condition of defendant, and his belief as to the latter's knowledge of right and wrong and his ability to distinguish between them. Hypothetical questions were also put, involving all the circumstances of the homicide and the prior and subsequent conduct and appearance of defendant, and their answers received to such questions.

In the course of his testimony Dr. Amis stated that defendant " would sit down on his spittoon and gaze down on the floor as if looking at some object, when none was there, manifesting no interest in anything that was going on; that although violently ill he was indifferent and unconcerned during his illness, was never worried about his condition, never saw any change in his expression, but he would sit and gaze in a dreamy, melancholy way, with his mouth open and under jaw hanging down, having a vacant, meaningless stare, his face expressionless — just a blank." In reference to this matter he was subsequently asked this question: " What does medical science say as to that meaningless, vacant stare, and the lower jaw hanging down in a listless way ? What does medical science teach as to that?" which was objected to and the objection sustained and exception taken. No ground of objection was stated and no reason given for sustaining the objection. It would seem probable that, inasmuch as the witness had shown himself qualified to testify as a medical expert, as he had stated all that he had seen and heard, and given his own expert opinion thereof, the court deemed it improper or unnecessary to enter into any examination as to what the witness thought medical science would say of defendant's conduct and appearance. It may have been because the matter had been sufficiently brought out in the prior testimony of the witness, but probably the reason we have suggested is the correct one, and in that view we are

of opinion that the ruling furnishes no ground for disturbing the judgment. After a witness has once qualified himself as an expert and given his own professional opinion in reference to that which he has seen or heard, or upon hypothetical questions, then it is ordinarily opening the door to too wide an inquiry to interrogate him as to what other scientific men have said upon such matters, or in respect to the general teachings of science thereon, or to permit books of science to be offered in evidence. *Collier* v. *Simpson*, 5 Carr. & Payne, 73. At any rate, the trial court must have some discretion as to the limit to be placed in any given case upon the extent to which the expert testimony may be carried, and when upon direct examination the opinion of the witness is fully disclosed, we think it cannot be said that the court erred in declining to permit on the same direct examination an inquiry into what is in some aspects both collateral and hearsay.

Again, when Dr. Wright was on the stand and had finished his direct examination, he was asked by the district attorney the following question: " You think. from your experience with him, from your conversation with him, that he killed the man because 'he threatened his life ; your idea is that he killed the man because he threatened his life?" which question was objected to, the objection overruled, and the witness permitted to answer. The answer which he gave was : " Well, in part.; and because he thought his own life was in danger, and because he thought he had the right to destroy this menace to his own life." We think this was clearly within the proper limits of cross-examination, and, therefore, the objection was properly overruled.

The remaining fifty-one assignments run to the charge of the court and to the refusal to give a series of special instructions asked by defendant. It would be a waste of time to attempt to notice each assignment separately, although we have examined all. On the first trial the court had charged the jury that every man was presumed to be sane; that insanity was a special defence, and that to make out such defence it must be established to the reasonable satisfaction of the jury, and that the burden of proof thereof rests with de-

fendant.   This court was of opinion that this was not the
correct rule of law ; that while it was true that every man is
presumed to be sane, yet whenever by the testimony the ques-
tion of insanity is raised then the fact of sanity, as any other
essential fact in the case, must be established to the satisfac-
tion of the jury beyond a reasonable doubt.   On the second
trial (the record of which is now before us for consideration)
the court charged the law in accordance with the rule laid
down by this court — quoting the very language of our opin-
ion — and also defined what was meant by insanity in lan-
guage which, under the circumstances of this case, was in no
degree prejudicial to the rights of the defendant, as follows :

  " The term ' insanity ' as used in this defence means such a
perverted and deranged condition of the mental and moral
faculties as to render a person incapable of distinguishing
between right and wrong, or unconscious at the time of the
nature of the act he is committing, or where, though con-
scious of it and able to distinguish between right and wrong
and know that the act is wrong, yet his will, by which I mean
the governing power of his mind, has been otherwise than
voluntarily so completely destroyed that his actions are not
subject to it, but are beyond his control."

  Although the court in addition to this specific language en-
larged upon the question, its charge in reference to the matter
of insanity covering several pages of the record and contain-
ing quotations from many adjudged cases, we find nothing
which qualifies or restricts the definition as above quoted.

  Seventeen special instructions were asked by defendant, all
of which except the last were in respect to the presumption of
innocence, reasonable doubt and insanity, matters which the
court had fully treated of in the general charge ; and of course
repetition or restatement in the language of counsel was un-
necessary.

  The last instruction asked was in reference to manslaughter.
But under the evidence there was no occasion for any state-
ment of the law on this.   There was no testimony to reduce
the offence, if any there was, below the grade of murder.   If
the defendant was sane and responsible for his actions there

was nothing upon which any suggestion of any inferior degree of homicide could be made, and therefore the court was under no obligation (indeed it would simply have been·confusing the minds of the jury) to give any instruction upon a 'matter which was not really open for their consideration.· *Sparf* v. *United States,* 156 U. S. 51, 63 ; *Stevenson* v. *United States,* 162 U. S. 313, 315.

These are all the matters presented by the assignments of error, and all the questions of any importance disclosed by the record. We find no error in the rulings of the court, and its judgment is, therefore,

*Affirmed.*