**LAWRENCE v. NUTTER.**
No. 6539.

United States Court of Appeals
Fourth Circuit.

Argued March 17, 1953.

Decided April 7, 1953.

George E. Allen, Richmond, Va. and W. R. Broaddus, Jr., Martinsville, Va. (John D. Epperly, Jr., Martinsville, Va., George E. Allen, Jr. and Allen, Allen, Allen & Allen, Richmond, Va., on the brief), for appellant.

Robert G. Butcher, Richmond, Va. and C. O'Conor Goolrick, Fredericksburg, Va. (Richard L. Williams, Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

As the result of an automobile collision, Henry Clay Lawrence, a young man of 22 years of age, was admitted to the Mary Washington Hospital at Fredericksburg, Virginia, on the afternoon of August 29, 1950, suffering from cerebral concussion and a severe compound comminuted fracture of the left elbow which involved the bones of both the lower and upper arm. He was placed under the care of Dr. Paul J. Nutter, an experienced surgeon, and received treatment which included cleansing the wound, removing unattached fragments of bone, straightening out the arm, applying a loose cast and administering anti-tetanus serum and doses of penicillin. On September 2 the plaintiff left the hospital and was taken by his brothers in an automobile to Martinsville, Virginia, where he was placed in the Martinsville General Hospital under the care of Dr. Joseph A. Ravenal, a general surgeon experienced in the treatment of fractures of the kind described. An examination of the arm by him led to a diagnosis of gas gangrene infection and accordingly X-ray therapy was administered and large doses of penicillin and gas gangrene antitoxin were given. Despite these and other treatments the condition of the patient deteriorated so seriously that the arm was amputated by Dr. Ravenal on September 5 leaving only a stump of two and a half to three inches.

The present suit was brought by Lawrence against Dr. Nutter on the charge that the doctor was negligent in his diagnosis and treatment of the wound during the plaintiff's stay at the Fredericksburg Hospital, and as the result the plaintiff lost his arm. The specific issues of negligence developed by the evidence related to the failure to administer gas gangrene antitoxin in the treatment of the patient at the Fredericksburg Hospital, and his early release from that hospital on September 2. Certain evidence on behalf of the plaintiff tended to show that the defendant was negligent in these respects but it was met by weighty factual and medical testimony in support of Dr. Nutter's treatment of the case, and the verdict of the jury was in his favor.

The questions of law to be decided on this appeal are whether there was error on the part of the District Court (1) in refusing to direct the defendant to produce the records of other similar cases treated by him; (2) in refusing to submit to the jury the question whether the defendant was negligent in permitting the plaintiff to leave the Fredericksburg Hospital on September 2; and (3) in refusing to allow the plaintiff's attorney to cross examine the defendant in regard to statements in certain medical books bearing on the treatment of similar cases.

█ At a pretrial conference between court and counsel it was agreed that the original or photostatic copies of the records of the two hospitals relating to the plaintiff's case might be used in evidence at the trial; but a motion of plaintiff's attorney to require the production of the records of other cases of a similar nature treated by Dr. Nutter was overruled. The record on this appeal does not show that plaintiff's attorney was in possession of any information that the medical records in other cases contained any material that was relevant to the case at bar. Moreover, the plaintiff had full opportunity to take the deposition of the defendant prior to the trial and to cross examine him when he testified as a witness in his own behalf. Under these circumstances we find no error or abuse of discretion in this ruling of the District Court.

█ There was evidence from which the jury might have found that the defendant permitted the plaintiff to leave the Fredericksburg Hospital on September 2, when it was dangerous for him to do so, and that

his early release may have contributed to the loss of his arm. On the other hand, there was direct and positive testimony on the part of the defendant and other witnesses that the plaintiff left the hospital of his own accord and without the physician's consent. Consequently an issue of fact was raised and it was error on the part of the judge to refuse to submit the issue to the jury, as requested by the attorney for the plaintiff.

■ We come then to the third and most important question in the case. During the cross examination of the defendant and another physician who testified on his behalf it was suggested that the condition of the plaintiff's injury was such that a qualified surgeon would have perceived, when the patient was brought to the Fredericksburg Hospital, that the administration of gas gangrene antitoxin was necessary to prevent infection of the wound, and that it was negligence on the part of the defendant to fail to administer it. The defendant and his corroborating witness testified that this remedy was no longer used in such cases. The attorney for the plaintiff then attempted to question them on cross examination in regard to statements in certain medical books in which the use of the antitoxin in cases of compound fractures was recommended, and it was brought out that these books were used in medical centers in Virginia and elsewhere, and were considered authorities by the witnesses. Objections to these questions were sustained on the ground that they were inadmissible. In our opinion this ruling was incorrect.

Wigmore has shown in §§ 1690 to 1700 of Vol. 6 of the 3d Edition of his work on Evidence that the exception to the hearsay rule respecting the admissibility in evidence of learned treatises has been recognized to a limited extent in this country when it is shown that the writer of the work is properly qualified; but that for the most part the exception has been repudiated. The decision in Davis v. United States, 165 U. S. 373, 375, 17 S.Ct. 360, 41 L.Ed. 750 is a notable example of the application of the strict rule in the examination of a medical witness, who had given his opinion as to the sanity of a defendant in a criminal case based upon his personal observation, but was not allowed to show the teachings of medical science in similar cases. The use of a scientific treatise in the cross examination of an expert witness on the stand for discrediting purposes has also been generally repudiated in the past. See Wigmore, § 1700(b) Notes 2 and 4. 20 Am.Jur., Evidence, §§ 797, 966, 968; 58 Am.Jur., Witnesses, §§ 839, 846; 32 C.J.S., Evidence, §§ 573, 574.

■ There is, however, a substantial body of authority which holds that when a witness is testifying as an expert, it is competent to test his knowledge on cross examination by reading to him extracts from scientific authorities, which he recognizes as standard upon the subject matter involved, and then ask him whether he agrees or disagrees with what has been read. The subject is discussed with great ability in Laird v. Boston & M. Railroad, 80 N.H. 377, 117 A. 591,[1] and in Kern v.

1. The unsoundness of the traditional rule is well shown in the following excerpt from Laird v. Boston & M. Railroad, 80 N.H. 377, 378, 117 A. 591, 592, as follows: "The objection to such procedure upon the ground that it violates the hearsay rule and permits the use of opinions which are not subject to cross-examination is unsound, or, else it proves too much. If the opinion of one who is an authority cannot be used at all unless the holder of it be sworn and be subject to cross-examination, by what logic can the same inadmissible opinion be used as a basis for the admissible opinion of the expert witness? The opinion of the expert, qualified by study, is admitted as an exception to the hearsay rule.

It is known to be founded upon the assertions of others. 1 Wig.Ev. § 687. Whether it shall be admitted or rejected depends upon the witness' familiarity with the hearsay. Unless he is thoroughly versed in that hearsay, he is not qualified to testify. The reasoning of courts excluding inquiries about the authorities, upon the cross-examination of the expert, leads directly to the conclusion that the opinion of the expert should have been excluded. If the cross-examination puts before the jury the unsworn opinion of the authority, the direct testimony of the expert does the same thing, with the added infirmity involved in his recollection of what the authorities say."

Pullen, 138 Or. 222, 6 P.2d 224, 82 A.L.R. 434, and is the subject of an extensive note in 82 A.L.R. 434. This view has met the approval of the more recent authorities. See Eagleston v. Rowley, 9 Cir., 172 F.2d 202; Mutual Benefit Health & Accident Ass'n v. Francis, 8 Cir., 148 F.2d 590; Cooper v. Atchison T. & S. F. R. Co., 347 Mo. 555, 567, 148 S.W.2d 773; Fonda v. Northwestern Publ. Service Co., 138 Neb. 262, 277, 292 N.W. 712; People v. Feldman, 299 N.Y. 153, 167, 168, 85 N.E.2d 913; Bowles v. Bourdon, Tex., 219 S.W.2d 779, 783.

The Supreme Court has approved the practice in Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63, where a fraud order of the Postmaster General restricting the use of the mails was upset. The findings of the Postmaster General were based in part on the expert testimony of physicians, and it was held that the cross examination of the physicians was unduly restricted. The court said, 338 U.S. at page 275, 70 S.Ct. at page 114:

" * * * It has been pointed out that the doctors' expert evidence rested on their general professional knowledge. To some extent this knowledge was acquired from medical text books and publications, on which these experts placed reliance. In cross-examination respondent sought to question these witnesses concerning statements in other medical books, some of which at least were shown to be respectable authorities. The questions were not permitted. We think this was an undue restriction on the right to cross-examine. It certainly is illogical, if not actually unfair, to permit witnesses to give expert opinions based on book knowledge, and then deprive the party challenging such evidence of all opportunity to interrogate them about divergent opinions expressed in other reputable books."

■ We need go no further in the pending case than to hold that the attention of an expert may be called in the course of cross examination to statements in conflict with his testimony contained in relevant scientific works which he recognizes as authoritative. This holding accords not only with the more liberal view taken in the recent cases, but also with the precept contained in Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that the statute or rule which favors the reception of evidence should govern. In conformity with this rule our decisions recognize "the wisdom * * * to admit in evidence any matter which throws light on the question in controversy, leaving to the discretion of the trial judge to hold the hearing within reasonable bounds". United States v. 25.-406 Acres of Land, 4 Cir., 172 F.2d 990, 995; Mourikas v. Vardianos, 4 Cir., 169 F. 2d 53, 59.

■ In the exercise of this discretion the judge may control the use of the material taken from learned works in the cross examination of medical witnesses so as not to seem to impose a greater burden upon the profession than is recognized by the rule in Virginia that the duty imposed upon a physician or surgeon is to exercise the highest degree of diligence and skill which is common to and exercised by the average member of the profession in good standing in the same or similar localities. See Henley v. Mason, 154 Va. 381, 383, 384, 153 S. E. 653. In the pending case no danger arose from this source because the evidence indicated that the medical witnesses who practiced in Virginia were familiar with the books referred to, and there was nothing to show that the members of the profession in Fredericksburg close to the great medical centers of Washington and Richmond were not alive to the developments of medical science.

The judgment of the District Court is reversed and the case is remanded for a new trial.

Reversed and remanded.