**UNITED STATES of America**
v.
**Charles Edward LAWRENSON.**
**Crim. No. 24975.**

United States District Court
D. Maryland.
Oct. 25, 1962.

Joseph D. Tydings, U. S. Atty., Robert W. Kernan and Benjamin R. Civiletti, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

Morgan L. Amaimo, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Lawrenson has now filed several new motions, namely: (1) a second motion for a new trial based on newly discovered evidence, in which he seeks to remedy the weakness of a former motion for a new trial, which was denied by this court, with the denial affirmed on appeal; (2) a motion under 28 U.S.C.A. § 2255 to vacate and set aside the judgment and sentence, which raises a number of points, most of which are similar to the points included in his former motion to vacate and correct the sentence; (3) a motion for leave to examine the grand jury records and for other discovery under Rules 16 and 6, F.R.Crim.P.; and (4) a supplementary motion under sec. 2255 raising questions as to his sanity at the time of the crime and of his competency to stand trial.

The evidence at the original trial and the evidence at the hearing on the former motion for new trial are summarized in the opinion of the Fourth Circuit, which disposed of the direct appeal, the former motion for a new trial and the former motion to vacate and correct the sentence. United States v. Lawrenson, 4 Cir., 298 F.2d 880 et seq. A petition for certiorari therefrom was denied. 370 U.S. at 947, 82 S.Ct. 1594, 8 L.Ed.2d 812.

See also, Lawrenson v. Anderson, 370 U.S. 932, 82 S.Ct. 1621, 8 L.Ed.2d 832 and Lawrenson v. Reid, 370 U.S. 962, 82 S. Ct. 1620, 8 L.Ed.2d 829 and United States Fidelity and Guaranty Co. v. Lawrenson, 4 Cir., 298 F.2d 890, cert. den. 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed.2d 406.

At the trial and on appeal Lawrenson was represented by court-appointed counsel. At the hearing on the present motions he was represented by counsel of his own choosing. He conferred with his counsel before each session and during the examination of witnesses, and argued some points himself.

### (1) Motion for New Trial

The evidence which resulted in Lawrenson's conviction is set out in the opinion of the Fourth Circuit on the former appeals in this case. United States v. Lawrenson, 298 F.2d at 882, 883.

The present "motion for a new trial based on the ground of newly discovered evidence" is based on a statement signed by Robert Cutler. The previous motion, which was denied by this court with the denial affirmed on appeal, 298 F.2d at 886–888, was also based on a statement made by Cutler. When Cutler was called as a witness at this hearing on the pending motion, as at the former hearing, he claimed his Fifth Amendment privilege on all questions relating to the giving of the statement and its contents. However, counsel for the Government and counsel for Lawrenson, with Lawrenson's approval, agreed that the Court should receive and consider all statements made by Cutler orally or in writing to any of Lawrenson's witnesses or to agents of the FBI, and to determine therefrom whether Lawrenson is entitled to a new trial under the controlling rules of law, which are stated in Mills v. United States, 4 Cir., 281 F.2d 736, 738, and United States v. Lawrenson, supra, 298 F.2d at pp. 886–887.

On the evidence offered by Lawrenson and by the Government on the present motion for new trial, I find the facts as set out below.

After the hearing in this Court on the first motion for new trial, and pending the appeal therefrom, Mrs. Lawrenson kept in touch with Cutler and sent him money on several occasions, once to get him out of the jail in Ciudad Juarez, Mexico.

On January 9, 1962, the opinion of the Fourth Circuit on Lawrenson's original appeal was filed. The contents of Cutler's former statement, which was sworn to by him, and the circumstances under which it was obtained, are set out in the opinions, 298 F.2d at pp. 886–888. Speaking through Judge Bell, the Fourth Circuit said: "All that Cutler's statements in the affidavit tend to prove is that *he* (Cutler) participated in the preparations for the robbery. It shows, if true, that he put the clothes, the pistol and gas pistol in defendant's car, and that he (Cutler) got Couch to purchase ammunition for the pistol, the receipt for which was later found on defendant's person. This mere implication of Cutler in the preparations for the robbery is not sufficient to disprove *defendant's* participation in it. It merely shows that there were three persons involved instead of only two. Defendant claims that since only two persons entered the bank, Cutler's testimony would necessarily have excluded defendant as a participant. This is not so, for it does not appear from the affidavit that Cutler would have, or could

have, testified that he took part in the *actual robbery*." 298 F.2d at 887 (emphasis in original).

Lawrenson promptly took steps to obtain an affidavit which would cure those defects. He was then in the District of Columbia jail. Also detained there was a lawyer named William L. Burke, and Mrs. Lawrenson was a frequent visitor. Mrs. Lawrenson communicated with Cutler, who was then in Ciudad Juarez, Mexico, and promised to pay him $3,000.00 if he would sign a statement that Lawrenson had nothing to do with the robbery, but that it had been staged and planned by Couch and himself (Cutler). She promised to pay an additional $17,000.00 if and when Lawrenson should be released. Burke got out of jail in February, prepared a form of affidavit, and mailed two copies thereof to Cutler. In sending the paper to Cutler, Burke did not refer to Mrs. Lawrenson's offer. Cutler signed one copy and sent it to Mrs. Lawrenson under her alias of Ruth Harris. He did not swear to the statement because he did not wish to be guilty of perjury.[1] The letter which Cutler wrote and forwarded with the statement, and which was offered in evidence by Lawrenson, asked for money for his expenses to Washington, and continued: "As you see I stand 5 years from Ohio, 1–5 years in Texas and whatever happens up there. I have a wife and I lover her and if anything hap-

---

1. The paper prepared by Burke at the request of the Lawrensons and signed by Cutler reads as follows: "The undersigned Robert L. Cutler, on this *28* date of February, 1962, freely, voluntarily and without inducement, threats, promises or any other consideration does make the following statement:

"That I, Robert L. Cutler, participated with Robert Couch in the robbery of the Mechanicsville bank on September 4, 1959, for which, Charles E. Lawrenson was tried and convicted.

"Mr. Charles E. Lawrenson had nothing to do with said robbery either as a participant or as an accomplice and the entire robbery was staged and planned by Robert Couch and myself.

"I am the same Robert L. Cutler who pleaded the 5th Amendment in the United

States District Court for the District of Maryland on a hearing petitioned by Mr. Lawrenson for a new trial on the grounds of newly discovered evidence, and I will now testify freely and voluntarily in any Court of Law as to my participation in this robbery and the innocence of Charles E. Lawrenson.

"/s/ Robert Lee Cutler
"Robert L. Cutler

"SWORN and subscribed to before me this ——— day of February, 1962.

"_____
"Notary Public

"I hereby certify that the foregoing is a true copy.

"/s/ Charles E. Lawrenson
"Charles E. Lawrenson"

pens to me on this bak robery you are going to send her mony ever week." Mrs. Lawrenson sent Cutler a plane ticket from El Paso to Washington and $35 for his expenses "across the river", but he has never received the $3,000. Lawrenson attached a copy of Cutler's statement and letter to his present motion for a new trial, which he filed herein on April 12, 1962.

Before that date, however, Cutler had been arrested in Texas for a felony theft committed there in November 1961, and on April 5, 1962, he made a voluntary statement to Special Agent Quiroz of the FBI at El Paso. Cutler said in substance: that he wished to complete his prison term as rapidly as possible in order to begin a new life with his Mexican wife in Mexico; that he was willing to testify in court (a) that the following persons were conspirators in the robbing of the Mechanicsville Bank, namely, Robert Couch, Edward Lawrenson, Katherine Merrick, a cab driver, a delicatessen store worker and Paul C. McCray, and (b) that Mrs. Lawrenson had agreed to pay him $3,000 (plus a conditional $17,000 if her husband were released) for a statement indicating that Edward Lawrenson was innocent, which he said he had signed on February 28, 1962, but which he said was not true and which he had signed "just to get the money".[2]

The Baltimore office of the FBI requested that a signed statement be obtained from Cutler, and such a statement was obtained on May 2, 1962. Material parts thereof are set out below.[3]

At the hearing on the present motion, Lawrenson testified and called as witnesses Cutler, Mrs. Lawrenson, three of his former court-appointed attorneys and Robert L. Venable. The Government

2. Cutler told the FBI that he would testify about the bank robbery "for nothing in order to show his good will" and that he would testify to information about certain other offenses if the FBI, on a confidential basis, would make known to Ohio and Texas authorities the nature and extent of his cooperation with the FBI and would give him police protection to the Mexican border upon his release from prison.

3. "I, Robert Lee Cutler, do hereby furnish the following voluntary statement to Robert E. Wiatt who has identified himself to me as a Special Agent of the Federal Bureau of Investigation. No threats or promises have been made me to obtain this statement and I have been told that I do not have to make a statement and that any made can be used against me in a court of law. I have been advised of my right to legal counsel.

"In February, 1962, I was living in Francisco Madero, Durango, Mexico. During this time I received a letter from Reva Lawrenson, wife of Charles Edward Lawrenson, to the effect that she desired my cooperation to make a statement concerning the bank robbery which occurred in September, 1959, at Mechanicsville, Maryland. Shortly thereafter I proceeded to Juarez, Mexico. There I received two large envelopes from Reva Lawrenson containing two sworn statements. A note accompanying these items set forth that if I were to sign the statements and testify to their accuracy I would be given $3,000 and thereafter $17,000 more, upon Lawrenson's release from prison. This money was to have been obtained from the bank robbery loot which had been taken from Edward Lawrenson at the time of his arrest in Miami, Florida. I then signed this one statement which was not witnessed or notarized and back dated it to February 28, 1962. This statement or affidavit was to the effect that Charles Edward Lawrenson had no participation in the bank robbery at Mechanicsville, Maryland and that Reva Lawrenson had no knowledge of this bank robbery which occurred in September, 1959. In this affidavit I assumed all blame for the robbery rather than Edward Lawrenson. I then mailed this signed affidavit to Reva Lawrenson in the name of Keith Harris, 1813 Newton Street, N.W. Washington, D.C. Reva then wired me a plane ticket from El Paso, Texas, to Washington, D.C. in the name of Harry Schaffer. She also wired $35.00 to my wife. I wish to state that the above referred to affidavit was completely false, that I signed it since I was under duress to acquire money for my ill wife, and that I did not have any participation in this robbery. I will be so willing to testify to the above facts wherein I completely refute the accuracy of the affidavit I signed and dated February 28, 1962. I wish to add that no promises have been furnished me to obtain this statement and I expect no favors for signing this statement."

called Special Agents Gerald N. Smith, of Baltimore, who was assigned to the Lawrenson case, and Robert A. Wiatt, of Houston, who obtained the May 2 statement from Cutler. It is unnecessary to summarize all of this testimony. On the stand Cutler refused to answer questions about either the robbery or his statements, claiming his Fifth Amendment privilege on advice of counsel. Mrs. Lawrenson told of an oral statement which she said Cutler made to her, and denied having made the promises which Cutler told the FBI she had made. I do not believe her testimony. Much of it was inconsistent with other evidence, improbable or both. She was not a credible witness.[4] Lawrenson testified to a conversation he said he had had with Cutler in the lock-up during the hearing on his former motion for new trial. Lawrenson made no reference to such a conversation with Cutler at the hearing on that motion or on his appeal. I find Lawrenson's testimony incredible. He admitted three previous convictions, two for forgery and one for "violation of the FHA act".

Lawrenson's former attorneys, called as witnesses by him, denied that Cutler had ever admitted to them that he (Cutler) had committed the robbery with Couch, or told them that Lawrenson had not participated therein.

Venable was in the lock-up, having been arrested on several robbery charges, when Cutler was brought back there from the courtroom. Venable testified that Cutler had said: " 'When you get over there tell him for $3,000 I will get him a new trial and get him kicked loose' ". Venable continued: "I said, 'What makes you think you can get him a new trial?' He said, 'Well, the guy is not good for the rap, but I am going to make him pay anyhow.' That is the extent of it." Of the three possibilities—that Cutler made those remarks, made no such remarks, or made a different remark which Venable misunderstood—I find the last to be most probable.

For a number of reasons I find the signed statement sent by Cutler to Mrs. Lawrenson on February 28, 1962, to be utterly incredible and untrue. I am satisfied that the statement which Cutler gave to Reno, one of Lawrenson's court-appointed counsel at his first trial, and which formed the basis for the former motion, see 298 F.2d at 886–887, stated the full extent of Cutler's participation in the affair. As Judge Bell pointed out, it did not exculpate Lawrenson. On at least two occasions Cutler has admitted that his February 28, 1962, statement is untrue; the fact that it was given for a promise of money is supported not only by Cutler's two statements to the FBI, but also to some extent by the letter he sent to Mrs. Lawrenson. Cutler's February 28 statement is contradicted by the evidence of many witnesses who testified at the trial; part of their testimony is set out in Judge Bell's opinion. It may also be recalled that Couch testified at the trial (p. 178, trial transcript) that an offer of money had been made to him by Lawrenson himself if he would exculpate Lawrenson. I am satisfied that the February 28 statement is a fraud, concocted by Lawrenson, Mrs. Lawrenson and possibly Burke just as the alibi evidence of McCray was improvised during the trial. See 298 F.2d at 883. The so-called newly discovered evidence is not "such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." Mills v. United States, 281 F.2d at 738; United States v. Lawrenson, 298 F.2d at 886–887. It is not, in fact, newly discovered evidence; it is newly manufactured evidence, and does not meet the five tests set out in the two cases just cited.

The motion for new trial is hereby denied.

### (2) Motion to Vacate Judgment and Sentence

The motion under 28 U.S.C.A. § 2255 to vacate and set aside the judgment and

---

4. She admitted having been convicted (under an alias) of false pretense and forgery, and had great difficulty remembering where she was married. She testified she was married to Lawrenson twice, though never divorced.

sentence and for the release of petitioner forthwith is similar in many respects to the motion under Rule 35, F.R.Crim.P., which was denied by this Court in an order which was affirmed on appeal. 298 F.2d at 888–890.

The pending motion raises the following points:

"A. That the original sentence was admittedly incorrect, and in violation of the Laws of the United States.

"B. That the correction of this sentence by this Court was illegal and contrary to the Laws and Constitution of the United States.

"C. That the sentence, as corrected, is illegal and contrary to the Laws and Constitution of the United States.

"D. That the Court was without jurisdiction to impose either sentence.

"E. That the Court lacked jurisdiction inasmuch as the initial arrest was illegal (as adjudged) and subsequent arraignment was also illegal, thus vitiating all subsequent proceedings.

"F. That the entire proceeding in the trial Court was such a departure from customary judicial procedure as to be a violation of the Constitutional rights of the Petitioner."

Recognizing that some of these points have been heretofore disposed of, Lawrenson presses three contentions:

■ (A) That the illegal arrest, search and seizure vitiated the entire subsequent legal proceedings by depriving the court of jurisdiction. It is quite clear, however, that an indictment valid on its face was issued, that a bench warrant was issued thereon and that Lawrenson had a full and fair trial under the indictment. Lawrenson adds an argument that the refusal to return the illegally seized money to him deprived him of his presumption of innocence. There is no merit in this contention, which was not raised at the trial or on appeal.

■ (B) "That the prosecutor at the trial in his closing argument deprived Lawrenson of his rights under the Fifth Amendment and a new trial should be granted." The passage relied on, torn from its context, is as follows: "And it is certainly inconsistent with Lawrenson's character not to say anything, particularly when he is innocent." In context, the comment referred to the failure of Lawrenson to raise, over a period of seven or eight months, a contention with respect to matters about which the prosecutor had been talking. It did not refer to Lawrenson's failure to take the stand or to appear in a lineup. The jury were properly instructed with respect to Lawrenson's rights. No point with respect to the comment by the prosecutor was made at the time, when exceptions were taken to the charge, or on appeal. If the point ever amounted to anything, it was waived.

(C) That the sentence imposed was improper. This contention was fully answered by Judge Bell's opinion, 298 F.2d at 888.

The motion to vacate is hereby denied.

*(3) Motion for Production and Inspection of Documents*

The motion to "produce and inspect documents and to direct testimony" under Rules 16 and 6, F.R.Crim.P., seeks an order requiring the United States Attorney to produce for inspection by Lawrenson the following:

"1. A transcript of the proceedings before the Federal Grand Jury in September, 1959, pertaining to the Petitioner, Charles E. Lawrenson.

"2. A copy of the names and addresses of all witnesses who appeared before said Grand Jury in relation to the Petitioner.

"3. A list of all objects presented to said Grand Jury in relation to the Petitioner.

"4. Copies or originals of any sworn or written statements of witnesses, before said Grand Jury in relation to Petitioner.

"5. Copies of any warrants, transcripts of prior proceedings and extradition papers in relation to the defendant presented to aforesaid Grand Jury."

The motion also asks the Court to direct six of the grand jurors to appear and testify.

The only support for the motion is an affidavit made by Lawrenson on information and belief to the same effect as testimony which he gave in open court in support of the motion, namely: that he was illegally arrested in Miami, Florida, on September 6, 1959, by agents of the FBI; that money and other objects were illegally seized at that time (see 298 F.2d at 882); that he knows of no other evidence which could have been presented to the grand jury, and therefore believes that the evidence which was improperly seized must have been the only evidence presented to the grand jury. However, at the hearing on the motion, Lawrenson admitted that he knew of and had offered in evidence at the trial two statements given by the co-defendant Couch to the FBI on September 5 and 6, 1959, in which Couch admitted the robbery and implicated Lawrenson as the other robber.

Lawrenson successfully moved to suppress the use of the money and other items as evidence. But neither he nor his counsel made any motion to dismiss the indictment or to attack its sufficiency until after his conviction had been affirmed on appeal, although the facts upon which the present motion is based were as well known to Lawrenson before the trial as they are now.

Rule 6(e), F.R.Crim.P., provides, in pertinent part:

"(e) *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the at-torneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

■ This rule evidently contemplates a timely motion to dismiss. The validity or sufficiency of an indictment which has not been challenged at the trial is not subject to collateral attack by habeas corpus or under 28 U.S.C.A. § 2255 except under exceptional circumstances, such as where the court which tried the case had no jurisdiction. Bowen v. Johnston, 306 U.S. 19, at 23, 59 S.Ct. 442, 83 L.Ed. 455, and cases there cited; McGann v. United States, 4 Cir., 249 F.2d 431; Aaron v. United States, 4 Cir., 188 F.2d 446; United States v. Texeira, 2 Cir., 162 F.2d 169; Roth v. United States, 8 Cir., 295 F.2d 364.

■ There are no exceptional circumstances in this case to justify a departure from the salutary general rule. There is no reason to believe that the only evidence presented to the grand jury was evidence which had been illegally seized in Miami. It is far more reasonable to believe that the indictment was based on Couch's identification of Lawrenson as the other robber.[5]

Even in cases where the attack on the indictment was timely made, the courts have refused to permit fishing expeditions to discover the basis for a grand jury's indictment. The reasons for so ruling have been recently stated by the Supreme Court in Lawn v. United States, 355 U.S. 339, at 349–350, 78 S.Ct. 311, 2

---

5. At the hearing on the pending motion, Lawrenson contended that Couch denied at the trial having made the statements referred to above. That contention is not supported by the record of the trial, where, as we have seen, Lawrenson himself offered the statements in evidence.

L.Ed.2d 321, and need not be restated here. See also Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397.

Under the authorities it is too late for Lawrenson to raise this point now. But even if the matter were within the sound discretion of the trial court, I am satisfied that the pending motion should not be granted on the showing made in this case.

The motion for Production and Inspection of Documents and to Direct Testimony is hereby denied.

### (4) The Motion Questioning Sanity and Competency

The motion raising the questions of (a) sanity at the time of the crime and (b) competency at the time of trial was based upon the report of a psychiatrist, employed by Lawrenson, who examined him on August 5, 1962, and found that he "is oriented in all spheres and is in a clear state of consciousness. He shows no evidence of a psychosis or neurosis." The Doctor gave a diagnosis of "personality disorder best classified as: 000–x60 Sociopathic Personality Disorder" and "000–x61 Antisocial Personality".

■ (a) The question of insanity at the time of the crime must be raised at the trial and cannot be used as a basis for a motion under sec. 2255. Taylor v. United States, 8 Cir., 282 F.2d 16 (1960); Hahn v. United States, 10 Cir., 178 F.2d 11 (1949); Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582, reversed on other grounds 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1955). See also Cason v. United States, 4 Cir., 220 F.2d 510 (1955).

■ At his trial, Lawrenson was represented by able court-appointed counsel but neither he nor his counsel ever suggested that Lawrenson was insane at the time of the crime. At the hearing on this motion, Lawrenson and his counsel offered only the report of the psychiatrist, which was attached to the motion. That report does not suggest insanity at the time of the crime under the rule of Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895) and 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750 (1897), which has not been overruled or modified, see Sauer v. State, 9 Cir., 241 F.2d 640 (1957), cert. den. 354 U.S. 940, 77 S. Ct. 1405, 1 L.Ed.2d 1539 (1957), nor under the rules prescribed in United States v. Currens, 3 Cir., 290 F.2d 751 (1961), Howard v. United States, 5 Cir., 232 F.2d 274 (1956) or Voss v. United States, 8 Cir., 259 F.2d 699 (1958), nor under the rule recommended by the American Law Institute in its Model Penal Code, Tentative Draft No. 4, sec. 4.01, see United States v. Hopkins, D.Md., 169 F.Supp. 187 (1958).[6] The doctor does not even say that in his opinion Lawrenson was insane under the Durham rule, Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (1954), merely that "in most cases so diagnosed, the staff of St. Elizabeth's hospital have stated that 'the crime' was the 'product' of the mental illness in terms of The Durham Rule."

■ (b) The question of the defendant's competency to stand trial may be raised after the trial upon a proper showing. See Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582 (1955); Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717 (1938); Taylor v. United States, 8 Cir., 282 F.2d 16 (1960); Smith v. United States, 9 Cir., 267 F.2d 210 (1959); Gregori v. United States, 5 Cir., 243 F.2d 48 (1957) at pp. 53–54; and Brown v. United States, 5 Cir., 267 F. 2d 42 (1959). In the instant case, counsel for Lawrenson has submitted his case on the motion and the doctor's report, which does not even suggest that Lawrenson was not able to understand the nature of the proceedings against him or to cooperate with his counsel in preparing his defense. Lawrenson and his present counsel indicated that they did not wish

6. See also article in 19 Md.L.R. at 271, entitled "Insanity as a Defense to Crime" by the writer of this opinion, in which the rule recommended by the American Law Institute is discussed, pp. 190–191.

to argue this point. His mental capacity at all times has been apparent to the Court.

The motion is hereby denied.

\*

At the argument on the foregoing motions, Lawrenson added a charge that the Fourth Circuit had violated its own Rules by accepting and answering a communication from the Bureau of Prisons with respect to where Lawrenson should be kept in custody in the event of affirmance of the conviction. This district court obviously has no power to consider such a contention.