**Edward L. BOERNGEN, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 20111.**

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1964.

Benjamin D. Lucas, San Antonio, Tex., for appellant.

Harry Lee Hudspeth, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from three judgments of conviction entered on pleas of guilty and from the denial of a motion for new trial as to each judgment. The motions for new trial raised for the first time the defense of insanity. The case was submitted in this Court on February 21, 1963, and its decision was delayed to await the decision in Carter v. United States of America, 5 Cir., 314 F.2d 386, argued en banc. The judgment in that case has now been affirmed by an evenly divided court.

All of the offenses of which the defendant was convicted were violations of Title 18, United States Code, § 2314; that is, causing forged checks to be transported in interstate commerce. In the district court the three cases were numbered 22146, 22198 and 22222. No. 22146 began as an eight-count indictment in the Southern District of California, each of the counts charging that the defendant caused to be transported in interstate commerce a forged check, the checks varying in amount from $91.21 to $199.29.

The defendant was arrested in the Western District of Texas and, after receiving a copy of the indictment, filed his consent under Rule 20, Fed.R.Crim. P., for the transfer of the case from the Southern District of California to the Western District of Texas so that he might enter a plea of guilty.

Case No. 22198 was begun by an information filed in the Western District of Texas, charging that the defendant caused to be transported in interstate commerce two forged checks, one in the amount of $75.00 and the other in the amount of $36.89.

Case No. 22222 was originally commenced by information filed in the Northern District of Georgia, charging that the defendant caused to be transported in interstate commerce a forged check in the amount of $175.00. In that case, also, the defendant filed his consent under Rule 20, Fed.R.Crim.P., for the case to be transferred from the Northern District of Georgia to the Western District of Texas in order that the defendant might plead guilty in the latter court.

The defendant and his court-appointed counsel appeared in open court in the Western District of Texas on January 2, 1962, at which time the defendant entered pleas of guilty in each case and on each count. The transcript of the testimony shows that the court meticulously complied with Rule 10, Fed.R.Crim.P., and there is no contention to the contrary.

When the court came to impose sentence, it first called on the defendant's counsel as to whether he had anything to say on behalf of the defendant, to which he replied: "No, sir, other than he spent a considerable amount of time in jail, as Your Honor knows." Pursuant to Rule 32, Fed.R.Crim.P., the court then asked the defendant if he wished to say anything in his own behalf, to which the defendant first replied in the negative, and then, after the court read to him a part of the presentence report showing that he had passed a substantial number of forged checks in Las Vegas, New York City, San Francisco, Miami and Los Angeles, as well as in the State of Texas, the court asked whether that was a correct statement and the defendant replied, "I believe so, sir." Later the court again inquired from the defendant: "You say there's nothing you wish to say to me now before I sentence you?" The defendant then informed the court that after he had gotten in trouble and while he was a fugitive from justice, he had been to see a psychiatrist in the Summer of 1961, a Dr. Weinberger in New York, "and I saw him four times that I could afford to see him. I talked to him, trying to straighten myself out. * * * But due to financial reasons I couldn't continue going to him."

The court then sentenced the defendant to 10 years' imprisonment on the first four counts in case No. 22146, and to another 10 years' imprisonment on the last four counts in that case, to run consecutively; that is, to begin to run on the completion of the sentence imposed on the first four counts. In case No. 22198 the court sentenced the defendant to 10 years on the two counts generally, to run concurrently with the sentence imposed on the last four counts in case No. 22146. In case No. 22222 the court sentenced the defendant to 10 years to run concurrently with the sentence imposed under the first four counts in case No. 22146. The sentences were imposed on January 2, 1962. On January 12, 1962, appearing by different counsel whom the court later appointed to further represent the defendant, the defendant filed a motion for new trial and that motion was later amended. Several grounds were assigned in support of the motion for new trial, but the only one of substance was that "competent and qualified medical evidence was not introduced at defendant's trial to show that he knew the nature of his offenses and the consequences of same."

The court conducted several hearings upon the motion for new trial, in the course of which the defendant testified in his own behalf and the testimony of two psychiatrists was received—one for the Government and one for the defendant. The psychiatrist testifying for the Government was Dr. George L. Ponomareff, who gave his opinion that the defendant was sane, that he knew the difference between right and wrong, and that he was able to adhere to the right and refrain from doing wrong; and that his mental state at the time of the commission of the offenses and at the present time was not significantly different. He also testified that, in his opinion, the defendant was able to intelligently participate in his own defense. The psychiatrist testifying in favor of defendant was Dr. David E. Keedy. Dr. Keedy's testimony is very voluminous; the gist of it is summarized in the following quotation.

"I would say that this man is psychiatrically ill. I would say that the dynamics back of his offenses is psychologically oriented in himself rather than as an antisocial sort of situation outside of himself. In other words, I think the greatest danger in what this boy does is to himself rather than to society. Because he is what we call a secondary psychopath, I think perhaps there is some,

a little more hopeful attitude permitted, than if he gave a lifelong history of attacking authority. My own feeling is that he knows the difference between right and wrong, but that because of his psychological orientation, his ability to always adhere to the right might be questioned. I think there is a possibility, as he serves whatever sentence is meted out to him, if a place could be chosen where there is some sort of rehabilitation with a psychiatric orientation—and I understand that such places do exist—that this would give him a chance to, at this late date, fulfill what probably is his destiny rather than just plain-out incarceration, which, according to my understanding of his behavior, would have no effect on him whatsoever. And whatever term were assessed him, if no rehabilitation were done with him, I think he would be a recidivist and just automatically attack authority in this oblique fashion. I believe that is, in summary, pretty much my findings."

Under the test of insanity as announced in Davis v. United States, 1895, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499, and Davis v. United States, 1897, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750, and adopted in this Circuit in Howard v. United States, 5 Cir. 1956, 232 F.2d 274, see also Argent v. United States, 5 Cir. 1963, 325 F.2d 162, it is very clear that this Court cannot hold the district court in error in overruling the motion for new trial.

The defendant complains that the punishment imposed is excessive. This Court is without power to modify a sentence which was legally imposed and within the bounds prescribed by statute. It cannot be said that the punishment is so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice and thus to constitute cruel and unusual punishment in violation of the Eighth Amendment. See Rogers v. United States, 5 Cir. 1962, 304 F.2d 520. In any event, the discretion to reduce the sentence rests with the district court to be exercised within sixty days after receipt by the district court of the mandate issued upon affirmance of its judgment. See Rule 35, Fed.R.Crim.P.

We find no reversible error in the record and the judgments of the district court are

Affirmed.