Charles D. OAKES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–SC–000186–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

Julia Karol Pearson, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

A Bullitt Circuit Court jury convicted Appellant, Charles D. Oakes, of second-degree robbery and of being a second-

degree persistent felony offender. He raises three issues on appeal: the trial court's refusal to allow him to introduce a KASPER report of the victim into evidence, problems relating to the victim's identification of him, and the court's refusal to give a lesser-included offense instruction. For the reasons set forth below, his conviction and sentence are affirmed.

## I. Background

The case against Appellant was principally based on the testimony of the complaining witness, Laura Kustes. Kustes testified that late one night she and one of her co-workers went to White Castle to eat. Inside the restaurant, a man, who Kustes later identified as Appellant, approached Kustes and her co-worker and began flirting.

Eventually Kustes and her co-worker left the restaurant. Outside, Appellant warned Kustes that he had overheard two police officers saying that they would pull her over. (Kustes had consumed one drink that night.) He offered them a ride home, but Kustes and her co-worker declined.

Kustes began driving her co-worker home. On the way, she had to stop at a set of train tracks. According to a witness who was driving behind Kustes, Appellant then got out of his car and walked towards Kustes's car. Kustes heard a "thump" on her driver-side window. She looked over and saw Appellant, who then promptly left. Kustes later discovered that her driver-side door handle was broken.

Kustes dropped her friend off, and then continued driving to her own home. Kustes pulled into her driveway and turned her car off. The passenger-side door was immediately opened. Kustes testified that she then saw Appellant lean into her car and say "What's up, girl?"

At this point, Kustes grabbed her purse and tried to flee, but Appellant grabbed her purse and started hitting her on her neck and side. Kustes dropped the purse, and Appellant took it and fled.

Kustes then entered her home and called the police. Kustes gave the investigating officer, Detective McGaha, a description of the perpetrator. McGaha obtained surveillance video from White Castle, which showed Kustes, her co-worker, and a man fitting Kustes's description of the perpetrator. The officer then received help from the Louisville Police Department in identifying the man in the surveillance footage; apparently, Appellant was identified by an officer who had previously arrested him.

McGaha then contacted the Kentucky State Police to construct a photo-array lineup of six men, including Appellant. McGaha showed this photo-array lineup to Kustes, who immediately identified Appellant as the man who hit her and took her purse.

The jury found Appellant guilty of second-degree robbery and of being a second-degree persistent felony offender. He was sentenced to twenty years in prison and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

### A. Admissibility of KASPER Report

■ Appellant first argues that reversal is required because the trial court refused to allow him to introduce or refer to a Kentucky All–Schedule Prescription Electronic Reporting (KASPER) record to impeach Kustes, who testified against him at trial. This Court disagrees.

The issue here is not whether Appellant can invade the KASPER privilege to receive exculpatory information or to use any such information in his defense. He clear-

ly can under *Commonwealth v. Bartlett,* 311 S.W.3d 224 (Ky.2010). However, *Bartlett* does not make a KASPER report necessarily admissible. It can still be excluded under our rules of evidence, such as for lack of relevance, just like anything else.

■ Because the question here is about the admissibility of evidence, the trial court's decision must be reviewed for an abuse of discretion. *E.g., Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999). A trial court abuses its discretion if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

The report here was offered to impeach Kustes. Appellant began his defense by calling Kustes, who had already testified against him during the Commonwealth's case in chief. Defense counsel asked Kustes about a prescription she had for Lortab, which she had said was in her purse the night of the robbery. Counsel asked her if she refilled her prescription as indicated, which would have been every two weeks. Kustes replied that she did. Counsel then asked: "So, if I were able to show you a KASPER report regarding you—," at which point the prosecutor objected and the attorneys approached the bench.

At the bench conference, the court examined the report and asked defense counsel pointedly: "How is this probative and relevant?" Defense counsel explained how he wanted to use it for impeachment purposes. In particular, he responded that it was "probative and relevant, because, again, it goes to impeachment testimony. She says she gets refills every two weeks, but under this report here, she got one that was sooner, a lot sooner, than two weeks there, so it's impeachment material." The court then sustained the prosecutor's objection. Defense counsel com-

plained: "Again, she clearly stated that she gets refills every two weeks. Again, this would go to directly impeach that, Your Honor."

The report was not admissible for impeachment because it was extrinsic evidence. KRE 608(b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence." Applied here, the "[s]pecific instances of the conduct of a witness" is the frequency Kustes received Lortab refills, "attacking . . . the witness' credibility" is her failure to recollect or tell the truth about the refills, and the prohibited "extrinsic evidence" is the KASPER report at issue here. The trial court's ruling was therefore correct under KRE 608(b).

■ On appeal, Appellant now claims that the report would have been admissible not for impeachment purposes, but to directly support his defense theory. Apparently, Appellant's theory was that Kustes was selling him Lortab, and after the drug sale went sour, she made up the story about the robbery to get revenge. Indeed, counsel mentioned this at a pre-trial conference to get discovery of the report. And during the Commonwealth's case in chief, defense counsel did ask Kustes if she met Appellant that night to sell him Lortab. (She denied doing so.)

Nevertheless, counsel did not explain to the court that the KASPER report would be used for anything other than impeachment. In fact, after the court ruled the report would be inadmissible to impeach Kustes, the court explained: "I don't know what context you're going to use it in, so I'm not going to make a blanket ruling [on its admissibility] until I know what grounds you believe it's admissible on." This begs for the response that the report

would be used to support this defense theory, if it were going to be explored any further. Yet, defense counsel responded that it was admissible for impeachment.

■ However, even assuming that Appellant tried to introduce the report to support this defense theory, it would still be inadmissible. As the trial court pointed out, the only entries on the KASPER report showing a sooner-than-biweekly refill "post-date the date of the events related to the indictment." Thus, the report could not directly show that Kustes had any extra Lortab to sell the night of the robbery; at most, it could show her character as an excessive prescription refiller to prove she may have gotten an extra refill on a prior occasion (despite this not being in the report). However, this would run afoul of KRE 404(b), which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Consequently, there was no error.

## B. Identification Procedure

### 1. Pre–Trial Confrontation

■ Appellant next argues that his right to confrontation was violated when Kustes failed to show up at a pre-trial suppression hearing concerning the admissibility of her identification of him. This Court does not agree.

First and foremost, the U.S. Supreme Court has never held that the right to confront witnesses applies to pre-trial hearings. In fact, to the contrary, it has repeatedly described the right as a trial right. E.g., Pennsylvania v. Ritchie, 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("The opinions of this Court show that the right to confrontation is a trial right ....") (plurality opinion); California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930,

26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of the trial that forms the core of the values furthered by the Confrontation Clause."); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right."). The Court's recent decisions, such as Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), do not indicate a change to this long-lived understanding.

For that reason, every other state ruling on this issue rejects claims that the Confrontation Clause applies to pre-trial hearings. E.g., State v. Sherry, 233 Kan. 920, 667 P.2d 367, 376 (1983) ("There is no constitutional right to allow the accused to confront witnesses against him at a preliminary hearing."); State v. Timmerman, 218 P.3d 590, 594 (Utah 2009) ("[T]he federal Confrontation Clause does not apply to preliminary hearings.") Every other state also agrees that the U.S. Supreme Court's recent decisions do not indicate otherwise. E.g., State v. Woinarowicz, 720 N.W.2d 635, 641 (N.D.2006) ("In Crawford, the United States Supreme Court did not indicate it intended to change the law and apply the Confrontation Clause to pretrial hearings."); People v. Brink, 31 A.D.3d 1139, 1140, 818 N.Y.S.2d 374 (N.Y.App. 2006) ("We reject the contention of defendant that Crawford v. Washington applies to his pretrial suppression hearing and that reversal is required because his right of confrontation was violated at that hearing.").

Notably, Appellant does not cite any authority to the contrary. In fact, in his reply brief, Appellant admits that "no court has held that the right to confront witnesses attaches at a pre-trial hearing." Given the abundance of courts that have ruled on this issue, Appellant's inability to find any authority to support his position

speaks volumes. And based on our independent research, this Court also cannot find any authority to support his position.

■ There is good reason to apply a different standard to pre-trial hearings. "A trial focuses on the ultimate issue of an accused's guilt or innocence, whereas in a pretrial hearing the focus is generally on the admissibility of evidence." *State v. Rivera*, 144 N.M. 836, 192 P.3d 1213, 1216 (2008). Consequently, "the interests at stake in a suppression hearing are of lesser magnitude than those in the criminal trial itself." *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (citations omitted). For that reason, out-of-court statements are admissible at pre-trial suppression hearings "for whatever they might be worth in resolving, one way or another, the issues raised." *United States v. Matlock*, 415 U.S. 164, 176, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *accord* KRE 104(a) (prohibition against hearsay does not apply to "[p]reliminary questions concerning . . . the admissibility of evidence"). This is true even when the issue is one of reliability of the declarant. *Thompkins v. Commonwealth*, 54 S.W.3d 147, 152 (Ky.2001) (allowing hearsay to determine reliability of confidential informant at pre-trial hearing); *see also McCray v. Illinois*, 386 U.S. 300, 311–13, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

It appears that the issue of whether *Crawford* applies to pre-trial hearings is an issue of first impression for Kentucky. Ultimately, this Court rejects Appellant's argument because we are persuaded by the above authorities. Neither the Confrontation Clause of the Sixth Amendment to the U.S. Constitution nor Section 11 of the Kentucky Constitution applies to pre-trial hearings. There was no violation of Appellant's right to confront his accuser in this case.

■ That being said, just because the use of hearsay in pre-trial hearings does not violate the right of a defendant to confront his accuser does not mean that over-reliance on hearsay cannot be problematic for other reasons. In-court statements are better than hearsay, and should therefore be generally favored; thus, over-reliance on hearsay could conceivably call into question whether the trial court had sufficient grounds on which to base its findings. However, that is not a concern in this case. It was reasonable to rely on the testimony of Detective McGaha at the hearing rather than Kustes, given that the principal concern was that the police, upon McGaha's request, constructed an unduly suggestive photo-array lineup.

### 2. Photo–Array Lineup

■ Appellant's next argument concerns the merits of the trial court's ruling that Kustes's identification was admissible. Ultimately, this Court finds no error.

■ An in-court identification violates due process if "the pretrial identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Dillingham v. Commonwealth*, 995 S.W.2d 377, 383 (Ky.1999) (quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986)). Deciding whether an in-court identification is so suspect as to violate due process involves a two-step test.

■ The first step is to determine whether the procedures under which the identification was secured "were unduly suggestive." *Gerlaugh v. Commonwealth*, 156 S.W.3d 747, 751 (Ky.2005) (quotation omitted). Under the second step, an unduly suggestive identification may still be admissible if, under the totality of the circumstances, it had "sufficient independent indicia of reliability." *Thigpen*, 804 F.2d at 895; *accord Gerlaugh*, 156 S.W.3d at 751. In this case, the trial court ruled that the identification procedures were not un-

duly suggestive under the first step, and so it never reached the second step. This Court has reviewed the array and agrees with the trial court's assessment.

 The key to the first step is determining whether Appellant stood out of the lineup so much that the procedure was "unduly suggestive." To illustrate, if the defendant has "extremely light skin" in an array otherwise composed of dark-skinned participants, the lineup is unduly suggestive. *United States v. Fernandez*, 456 F.2d 638, 641–43 (2d Cir.1972). An identification can also be unduly suggestive if the defendant stands out of the lineup because of his height and because he was wearing clothing resembling that worn by the criminal. *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

However, a photo-array lineup is not unduly suggestive if the defendant is the only participant with a "fade" haircut, *Commonwealth v. Silva–Santiago*, 453 Mass. 782, 906 N.E.2d 299, 310 (2009), or if the defendant has a different eye color, *Commonwealth v. Crork*, 966 A.2d 585, 589–90 (Pa.Super.2009), as long as he has reasonably similar features to the other participants. Similarly, a lineup is not unduly suggestive if "the photograph of the defendant was the most clearly focused," *People v. Sawyer*, 253 A.D.2d 501, 501, 677 N.Y.S.2d 799 (N.Y.App.1998), if the defendant's "photo is a full length shot while the rest of the photos are bust shots," *United States v. Bell*, 457 F.2d 1231, 1235 (5th Cir.1972), or if the defendant was the only participant depicted in a single, front-view photograph and the only one who was clean shaven, *United States v. Harrison*, 460 F.2d 270, 271 (2d Cir.1972) (per cu-

riam). This Court has said that a photo-array lineup was not unduly suggestive where only the defendant wore glasses and a jacket, given that the photos were otherwise similar. *King v. Commonwealth*, 142 S.W.3d 645, 650 (Ky.2004).

Turning to this case, the photo-array lineup was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Dillingham*, 995 S.W.2d at 383 (quoting *Thigpen*, 804 F.2d at 895). Appellant and the other five participants are all white males with very short hair and roundish heads. Appellant appears to have blue eyes, like four out of the five others; and, he and four of the others appear to have average builds. In short, Appellant's features are similar to those of the other participants.

It is true, however, that Appellant's photo stands out to some extent. In particular, he was wearing a colored shirt with a collar, whereas the other participants appear to be wearing white or black t-shirts. In addition, his photo appears to be taken at a higher resolution; the other photos are of lower quality and lack proper gradation of shades and tones in some places, particularly around the participants' necklines.[1] And the lighting in the other photos appears to be brighter. However, all of the photos are single, simple front-view headshots, taken against a solid white background.

Appellant does not stand out so much in the photo-array lineup that admitting Kustes's identification of him violated due process. Appellant's features resemble those of the other participants, and the difference in quality of the photos is not so great as to prevent reasoned consideration

---

1. This creates an illusion that some of the other participants have facial hair in these areas. For this reason, Appellant states in his brief that he is the only participant who is clean shaven; to this Court, it appears that only two of the others have facial hair, and any appearance of facial hair on the remaining participants is a result of the poor quality of their photos.

of the other participants. The differences here are no worse than in *King*, where the defendant was the only participant with glasses and a jacket, 142 S.W.3d at 650. The problems with the lineup seem analogous to the defendant having a different haircut, *cf. Silva–Santiago*, 906 N.E.2d at 310, having the only single, front-view photo, *cf. Harrison*, 460 F.2d at 271, or having the only full-length body shot in the lineup, *cf. Bell*, 457 F.2d at 1235, all of which have been held to not be unduly suggestive. Consequently, this Court concludes Kustes was properly allowed to give an in-court identification of Appellant.

■ Last, it is worth noting that even if this Court were to find that the lineup was unduly suggestive, it would still be saved by "sufficient independent indicia of reliability" in Kustes's identification. Kustes had described the perpetrator as having a tattoo on his neck reading "D W B"—a tattoo which, it turns out, is also on Appellant's neck. Kustes had viewed Appellant for some time at White Castle and so she was familiar with his appearance. She had, as the trial court described, "expressed a great deal of certainty in her identification." And, as Appellant concedes, "[t]he time between the crime and the confrontation was relatively short." Thus, even if this Court were to conclude that the photo-array lineup was unduly suggestive under the first step, we would nevertheless conclude that the identification was admissible under the second step. There was no error.

### C. Instructions on Lesser–Included Offense

■ Appellant's last argument is that he was entitled to a jury instruction on the lesser-included offense of theft by unlawful taking. Again, this Court disagrees.

■ The failure to grant a request for a lesser-included offense instruction is reversible error "if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *White v. Commonwealth*, 178 S.W.3d 470, 490 (Ky.2006) (quotation omitted); *accord Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998). That is, a court may refuse to give a lesser-included offense instruction only if "there is no room for any possible theory except that he is guilty [of the greater offense] or he is innocent." *Commonwealth v. Wolford*, 4 S.W.3d 534, 538–39 (Ky.1999); *accord Davis v. United States*, 165 U.S. 373, 376–77, 17 S.Ct. 360, 41 L.Ed. 750 (1897).

■ Theft by unlawful taking is a lesser-included offense of both first- and second-degree robbery. Robbery is ordinarily thought of as a theft combined with an assault. Specifically, second-degree robbery is theft plus "us[ing] or threaten[ing] the immediate use of physical force" to accomplish the theft, KRS 514.030(1)(a), and first-degree robbery is second-degree robbery plus one of three possible aggravating factors, KRS 515.020(1)(a).[2] Consequently, Appellant would be entitled to the instruction only if the jury could reasonably conclude that he committed theft without any physical force, as the use of force would elevate the crime to at least second-degree robbery. *Compare* KRS 514.030(1)(a), *with* KRS 515.020(1)(a) *and* KRS KRS 515.030(1).

---

**2.** The only possibility here is "caus[ing] physical injury," KRS 515.020(1)(a). The other two aggravating factors are being "armed with a deadly weapon," KRS 515.020(1)(b), and "us[ing] or threaten[ing] the immediate use of a dangerous instrument," KRS 515.020(1)(c). No evidence was introduced suggesting Appellant was armed with or used any sort of weapon or instrument during the robbery.

Appellant contends that the jury could have reasonably made this conclusion because they could have believed Kustes's injuries were caused by her "movement . . . with her shoulder," which caused her to "hit the driver's seat, . . . caused her arm to go numb and [caused her] . . . to drop her purse." In other words, Appellant contends that the jury could reasonably conclude Kustes injured herself in reacting to the theft while getting out of her car, but that Appellant did not himself use any force against her.

The problem with this argument, as the Commonwealth points out, is that "there was absolutely no evidence presented at the trial to support" the theory that Kustes's injuries were self-inflicted. And it would not have been a reasonable inference, either. The only evidence presented to the jury was Kustes's testimony that Appellant forcibly extracted the purse from her clutches by hitting her on the neck. The defense strategy was to attack Kustes's credibility and reliability and to ask her whether she was trying to sell Appellant her Lortab. The defense did not put forth an alternative account of the events in which Kustes injured herself during the theft. Assuming the theft happened, the use of force was not put into reasonable doubt.

 Although it can certainly be proper to believe one part of a witness' testimony but not another, *see, e.g., Gillispie v. Commonwealth,* 212 Ky. 472, 279 S.W. 671, 672 (1926), the jury must have some reasonable basis for doing so. This Court has previously said that "[t]he decision as to whose story to believe is, of course, an issue for the jury to decide." *Webb v. Commonwealth,* 904 S.W.2d 226, 229 (Ky. 1995). But here there was no competing story in which Kustes injured herself; her story was that Appellant used force to take her purse, and his story was that she was mistaken or lying that he did so.

 "[A] lesser-included offense instruction is available only when supported by the evidence," and "[t]he jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios." *White,* 178 S.W.3d at 491. There was no evidence supporting the theory that Kustes injured herself, and so this theory amounted to nothing more than an imaginary scenario that the jury could not reasonably believe.

There are only three reasonable conclusions based on the evidence: (1) someone else robbed Kustes with force, and Appellant is a victim of a false identification, and so an acquittal was required; (2) no crime occurred at all because Kustes fabricated the incident, and so again an acquittal was required; or (3) Appellant robbed Kustes with force, and so he was guilty of some degree of robbery. The evidence demanded either an acquittal or a conviction for the charged offenses. *Cf. Davis,* 165 U.S. at 376–77, 17 S.Ct. 360; *Wolford,* 4 S.W.3d at 538–39. If a lesser-included offense instruction were necessary here, it would be necessary in every robbery case, as the ability of the jury to disregard uncontroverted evidence about the use of force, without a reasonable basis to do so, would turn any robbery into a theft. Therefore, the trial court correctly denied Appellant's request to instruct the jury on the lesser-included offense of theft by unlawful taking.

### III. Conclusion

For the above reasons, the judgment of the Bullitt Circuit Court is affirmed.

All sitting. All concur.