# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 18, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2024-SC-0448-MR

JONATHAN PUCKETT                                                   APPELLANT

ON APPEAL FROM WASHINGTON CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
NO. 23-CR-00015

v.

COMMONWEALTH OF KENTUCKY                                   APPELLEE

**MEMORANDUM OPINION OF THE COURT**
**<u>AFFIRMING</u>**

A Washington County jury convicted Jonathan Puckett of intentional murder, second-degree arson, tampering with physical evidence, and being a first-degree persistent felony offender ("PFO"). The Washington Circuit Court sentenced him to life in prison. He appeals to this Court as a matter of right. KY. CONST. § 110(2)(b). After review, we affirm.

**<u>BACKGROUND</u>**

In 2014, Puckett and Thomas Ray Pendygraft both worked second shift at Wilbert Plastics in Lebanon, Kentucky. Because Puckett did not have a vehicle, Pendygraft occasionally gave him rides to and from work. On July 31, 2014, Pendygraft worked from 3:00 p.m. until 11:00 p.m. Puckett did not work that day but asked his friend, Joseph Chaudoin, to give him a ride to Wilbert

Plastics to pick up his paycheck.[1] That night, Chaudoin dropped Puckett off in the Wilbert Plastics parking lot. While Pendygraft was working inside, Puckett broke into his vehicle and took Lortab pills from it. Puckett sold some of the pills and gave others to his girlfriend, Stormy Colvin. While on a break, Pendygraft noticed his car had been broken into and that the pills were missing. He questioned Puckett about them, but Puckett denied any knowledge of them.

While still in the Wilbert Plastics' parking lot, Puckett contacted Chaudoin to ask him for a ride later that night. Puckett did not tell Chaudoin from where he would need to be picked up. He just told him to "stay up" until he contacted him again.

Pendygraft finished his shift at 11:00 p.m. Workers, including Pendygraft, received their paychecks that night. He and some coworkers lingered in Wilbert Plastics' parking lot because they could not cash their paychecks at Walmart until midnight. Pendygraft and two coworkers went to his car to smoke a marijuana blunt. They were surprised that Puckett was already sitting in Pendygraft's car. After smoking, the two coworkers got out of the car and left the parking lot, and Pendygraft and Puckett drove to Walmart in Pendygraft's car.

They arrived at Walmart around midnight. Pendygraft entered Walmart, cashed his $404 paycheck, and purchased some items, including a lighter and

---

[1] There is no evidence in the record showing that Puckett retrieved his paycheck from Wilbert Plastics or cashed it that night.

lighter fluid. Puckett never went into Walmart. While in the parking lot, Puckett again contacted Chaudoin about getting a ride from him later that night. Puckett told Chaudoin he would pay him to give him a ride, but would not say where he was. He told Chaudoin to "just stay up" until he contacted him again.

Pendygraft and Puckett left Walmart at approximately 12:54 a.m. and went to a gas station. Thereafter, Puckett called someone to purchase drugs for himself and Pendygraft. They then drove down Booker Road and parked near the reservoir in Washington County, Kentucky, at around 1:35 a.m. Puckett again contacted Chaudoin and instructed him to go to the McDonald's in Springfield, Kentucky, and wait for further instructions. Sometime close to 2:00 a.m., Pendygraft was killed, and his car was set on fire with his body inside it.

Between 2:05 a.m. and 2:15 a.m., Shelby McCain drove down Booker Road and saw a man matching Puckett's description walking toward Highway 55. Seconds later, she passed Pendygraft's car, engulfed in flames. She did not observe anyone else walking or driving down Booker Road that night. At 2:17 a.m., Chaudoin and his girlfriend picked Puckett up on Booker Road. After stopping at a gas station, they took Puckett home. When he arrived home, his girlfriend noticed that he smelled like smoke and gasoline. He immediately took off his clothes, put them in the washing machine, and took a shower.[2]

---

[2] Law enforcement recovered Puckett's shorts and shirt from the washing machine.

Later that morning, Roy Blanford went for a walk on Booker Road and noticed a smoldering car. He approached the vehicle and saw what he believed were human remains inside. He called the Washington County Sheriff's Office to report what he saw. The Sheriff's Office then contacted Kentucky State Police ("KSP"). KSP detectives went to the scene to investigate.

The investigation led detectives to Puckett because he worked with Pendygraft and was the last person to be seen with him. Over the course of the investigation, Puckett's story about his whereabouts that night changed several times, first claiming he was not on Booker Road that night, then admitting he was there but had been picked up by Chaudoin. Puckett consistently denied any involvement with Pendygraft's death or the fire. KSP seized Puckett's phone and uncovered data that established a timeline for the night in question, including Puckett getting a ride to Wilbert Plastics from Chaudoin, his possession of the Lortab pills, his presence at Wilbert Plastics and Walmart with Pendygraft, and his conversation with Chaudoin asking to be picked up on Booker Road after Pendygraft was killed.[3]

Because of the severe damage to Pendygraft's body caused by the fire, the medical examiner was unable to determine the manner or cause of his death, but was able to determine he was dead before the fire started. Due to damage to the vehicle caused by the fire, the arson investigator could not

---

[3] An application that recorded Puckett's phone calls was installed on his cellphone. Some of those phone calls were played at trial.

4

determine the source of ignition or whether an accelerant was used, but he could determine that the fire started in the front passenger seat.

In 2023, Puckett was indicted by a Washington County Grand Jury for murder, first-degree arson, abuse of a corpse, tampering with physical evidence, and being a first-degree PFO.[4] Upon Puckett's motion in limine, the trial court dismissed the charge of abuse of a corpse because the statute of limitations had expired. At the close of the Commonwealth's case-in-chief, Puckett moved for a directed verdict, which the trial court denied except to amend the arson charge down to second-degree.

The Commonwealth theorized that Puckett murdered Pendygraft because he owed money to other people and needed to pay them. Throughout the trial, Puckett's defense continued to be that he was not involved in the murder or arson. He presented testimony from Shelly Lyons to allege James Douglas Ray as an alternate perpetrator ("aaltperp"). He tendered proposed jury instructions, including lesser-included offenses for both intentional murder and second-degree arson. The trial court declined to instruct the jury on these lesser-included offenses. After deliberations, the jury convicted Puckett on all charges, and the trial court imposed the recommended sentence of life imprisonment. This appeal followed.

---

[4] Puckett was not charged earlier because he absconded parole and fled to Texas soon after the investigation began in 2014. He was then convicted of assault in Texas and was extradited to Kentucky after serving his Texas sentence.

## ANALYSIS

On appeal, Puckett argues: (1) the trial court deprived him a fair trial and right to present a defense by denying his request to instruct the jury on the lesser-included offenses of intentional murder and arson in the second degree; (2) the trial court denied him the right to present a defense when it excluded aaltperp evidence consisting of two statements from Lyons and KSP Detective Davis; and (3) the trial court denied him a fair trial by allowing the Commonwealth to introduce propensity evidence.

We review the trial court's decision of whether to give a particular jury instruction for abuse of discretion. *Taylor v. Commonwealth*, 671 S.W.3d 36, 41 (Ky. 2023). We also review evidentiary issues for abuse of discretion. *Roberson v. Commonwealth*, 694 S.W.3d 272, 279 (Ky. 2024) (citation omitted). In our review, we must give great deference to the trial court's decisions because that court "is in the best position to evaluate the evidence." *Bailey v. Commonwealth*, 194 S.W.3d 296, 304 (Ky. 2006) (internal quotation mark omitted). We will reverse only if the trial court acted arbitrarily, unreasonably, unfairly, or in a manner that was unsupported by sound legal principles. *Taylor*, 671 S.W.3d at 41.

First, the trial court did not deprive Puckett of a fair trial or of the right to present a defense by denying his requests for jury instructions on lesser-included offenses. Puckett first argues that he was entitled to jury instructions on lesser-included offenses for intentional murder. He tendered, and the trial

6

court rejected, instructions for wanton murder, first-degree manslaughter, second-degree manslaughter, reckless homicide, and self-protection.

As part of his defense, "a defendant has a right to have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions." *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011). While lesser-included offenses are not themselves a defense, they are "in fact and principle, a defense against the higher charge." *Id.* For this reason, lesser-included offenses are encompassed within a defendant's right to present a defense. However, an instruction on a lesser-included offense is "appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge but believe beyond a reasonable doubt that the defendant is guilty of the lesser charge." *Id.* There must be evidence to support the giving of a lesser included instruction. *Oakes v. Commonwealth*, 320 S.W.3d 50, 59 (Ky. 2010). A court may decline to give such an instruction where the only viable theory based on the evidence is that the defendant is either guilty of the greater offense or he is innocent. *Id.* at 58.

In this case, Puckett requested instructions on lesser-included charges that require less culpable mental states than intentional murder. The jury found Puckett *intentionally* caused Pendygraft's death. KRS[5] 507.020(1)(a). For Puckett to be entitled to instructions on the lesser included offenses, the

---

[5] Kentucky Revised Statutes.

evidence must support a finding that a reasonable juror could entertain a reasonable doubt on his guilt for intentional murder and believe beyond a reasonable doubt that he was guilty of one of the following:

- wanton murder, which requires a defendant to "wantonly engage[] in conduct which creates a grave risk of death to another person and thereby causes the death of another person[;]"[6]

- manslaughter in the first degree, which requires that "[w]ith intent to cause serious physical injury to another person, [the defendant] causes the death of such person or of a third person;"[7]

- manslaughter in the second degree, which requires a defendant to "wantonly cause[] the death of another person[;]"[8] or

- reckless homicide, which requires a defendant to "cause [] the death of another person" by acting recklessly.[9]

The evidence does not support such a finding.

Puckett did not put forth any theory that challenged the Commonwealth's theory that he acted intentionally. Instead, Puckett's defense was only that he was innocent of the killing. This is insufficient to support his claim of entitlement to instructions on the lesser-included offenses. "'[T]he jury is required to decide a criminal case on the evidence as presented or

---

[6] KRS 507.020(1)(b).

[7] KRS 507.030(1)(a).

[8] KRS 507.040(1).

[9] KRS 507.050(1).

reasonably deducible therefrom, not on imaginary scenarios.'" *Oakes*, 320 S.W.3d at 59 (quoting *White v. Commonwealth*, 178 S.W. 3d 470, 491 (Ky. 2006). The trial court must not instruct the jury on any theory unsupported by the evidence. *Hudson v. Commonwealth*, 385 S.W.3d 411, 416 (Ky. 2012).

Here, Puckett fails to identify any evidence proving he may have had a less culpable mental state at the time of Pendygraft's death. Without such evidence, there is no way for this Court to find a jury could *rationally* find Puckett not guilty of intentional murder but guilty of one of the lesser offenses. *See Mash v. Commonwealth*, 376 S.W.3d 548, 559 (Ky. 2012). The jury was offered the only two options rationally supported by the evidence–either to find Puckett guilty of intentionally murdering Pendygraft or innocent of the crime. Because there was no evidence Puckett acted with any less culpable state of mind, there is no possibility a reasonable juror would have found him not guilty of intentional murder but guilty of any of the lesser charges. Therefore, the trial court did not abuse its discretion by declining to instruct the jury on the lesser-included offenses.[10]

Puckett further argues he was entitled to an instruction for third-degree arson as the lesser-included offense of second-degree arson. Like the offenses discussed above, these two offenses require different states of mind. To be

---

[10] Puckett makes no specific argument about his entitlement to the self-defense instruction other than mentioning that it was included in his tendered instructions. "'[W]ith rare exception it is the rule that where a defendant denies committing the homicide at all, he is not entitled to a self-defense instruction.'" *Turner v. Commonwealth*, 544 S.W.3d 610, 626 (Ky. 2018) (quoting *Fitch v. Commonwealth*, 103 S.W.2d 98, 102 (Ky. 1937)). No exception applies to this case. Puckett was not entitled to a self-defense instruction.

found guilty of arson in the second degree, the defendant must act "with intent to destroy or damage[,]" while he must "wantonly cause[] destruction or damage" to be guilty of arson in the third degree. KRS 513.030(1); KRS 513.040(1). Puckett claims he was entitled to an instruction on third-degree arson because the Commonwealth's arson investigator could not rule out faulty wiring as the cause of the fire. This argument fails for the same reasons as his prior one. Again, Puckett points to no evidence supporting a jury finding that he acted wantonly in starting the fire. Instead, he denies any involvement in the crime. The trial court had no duty to instruct the jury on an offense that was unsupported by the evidence. *Hudson,* 385 S.W.3d at 416.

Furthermore, the evidence Puckett cites does not support his claim of entitlement to an instruction on the lesser-included offense. The arson investigator could not rule out faulty wiring as the cause of the fire. It was the jury's duty to weigh the credibility of this testimony. They clearly chose to give greater weight to other evidence to find that Puckett intentionally set the fire. As was true in the prior argument, the jury was presented with the only two options supported by the evidence–to find Puckett either intentionally set fire to the vehicle or did not set the fire. Neither the testimony of the arson investigator or any other evidence supports a finding that a reasonable juror could have found him not guilty of acting intentionally but guilty of acting wantonly. Therefore, the trial court did not abuse its discretion in declining to instruct the jury on arson in the third degree.

10

Next, the trial court did not deny Puckett the right to present a defense by excluding brief testimony from two witnesses regarding Ray as the perpetrator. First, Puckett called Lyons to testify about an occasion when Ray came to her house covered in blood, and her husband took a gas can and left with Ray. She was sure the encounter occurred in 2016 at the home she shared with her husband on Horan Lane. She was confident the incident happened in 2016, not 2014. During her testimony, the Commonwealth objected to Ray's statement that he was "about to do it just like [he] did in 2014" as hearsay. Defense counsel conceded Lyons would not be able to testify to Ray's statements. Specifically, defense counsel said she was not trying to introduce Ray's statement about 2014 into evidence. This amounts to a waiver of Puckett's argument for admission of the statement. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023) (citing *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)). Waiver precludes review by this Court. *Id.* (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)).

Later, Puckett asked Detective Davis about questioning other people about their possible involvement in Pendygraft's death, including Ray. Detective Davis testified that he investigated Ray's potential involvement. Puckett then asked him if they had requested DNA samples from others, including Ray. The Commonwealth objected. The trial court sustained the objection, reasoning that if Detective Davis were asked whether Ray consented

11

to providing his DNA, the testimony would be hearsay.[11] Puckett now argues that this deprived him of his right to present a defense.

He argues the trial court should have admitted Detective Davis' testimony regarding Ray's refusal to provide DNA even if its admission violated the evidentiary rules under *Hedgepath v. Commonwealth*, 441 S.W.3d 119 (Ky. 2014). A defendant may indeed introduce aaltperp evidence "even when its admission would contradict the Rules of Evidence[.]" *Id.* at 132. However, as we recognized in *Hedgepath*, evidence "is not automatically admissible simply because it tends to show that someone else committed the offense." *Id.* (internal quotation marks omitted). "At its heart, the critical question for aaltperp evidence is one of relevance: whether the defendant's proffered evidence has any tendency to make the existence of any consequential fact more or less probable." *Gray v. Commonwealth*, 480 S.W.3d 253, 267 (Ky. 2016). We have held that a trial court must evaluate the relevance of aaltperp evidence, like all other evidence, under KRE[12] 403, keeping in mind the possibility that "speculative, far[-]fetched theories" could confuse or mislead the jury. *Id.* at 268. "The proponent of the [aaltperp] theory must establish

---

[11] Puckett also attempted to question KSP Sergeant Gregory about interviewing Ray and requesting a DNA sample. The trial court limited the questioning on the same grounds but allowed defense counsel to ask whether Ray was interviewed by KSP and whether they obtained a search warrant for his DNA or phone records. Sergeant Gregory testified Ray was interviewed but no search warrants were obtained for his DNA or phone records.

[12] Kentucky Rules of Evidence.

12

something more than simple relevance or the threat of confusion or deception can indeed substantially outweigh the evidentiary value of the theory." *Id.*

Here, the trial court did not abuse its discretion or deprive Puckett of his right to a defense by declining to admit the single statement from Detective Davis. The only other evidence Puckett introduced about Ray was Lyons' testimony. She testified to an encounter with him that occurred years after Pendygraft's murder. She was certain it had not happened in 2014. This evidence alone could have been confusing to the jury. *Id.* Allowing Detective Davis to also testify to hearsay statements from Ray would only have increased the likelihood of confusion. On this basis, the trial court did not abuse its discretion.

Alternatively, were we to find that the trial court abused its discretion under *Gray* by excluding Detective Davis' testimony, the error would be harmless. RCr[13] 9.24. An evidentiary error is harmless if it did not "substantially sway" the judgment. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). Here, Puckett was able to present the jury with aaltperp evidence. They heard from Lyons about seeing Ray covered in blood and seeing her husband leave with him with a can of gasoline. They also heard that police investigated individuals other than Puckett, including Ray. The jury did not believe this testimony in light of the evidence against Puckett. There is no substantial

---

[13] Kentucky Rules of Criminal Procedure.

possibility that their verdict would have been different had they heard one additional hearsay statement about Ray from Detective Davis. Therefore, any error the trial court may have committed would be harmless.

Finally, the trial court did not deprive Puckett of a fair trial by allowing the Commonwealth to introduce evidence of his request to conduct a controlled burn on August 1, 2014. The Commonwealth initially gave notice under KRE 404(b) that it intended to introduce evidence of multiple controlled burns for which Puckett sought approval from May to August 2014. After a hearing on the issue, the trial court allowed the Commonwealth to introduce a recording from Puckett's cellphone of only his request on the morning of August 1, 2014. Puckett argues this was unduly prejudicial because it unfairly showed the jury he had a propensity for setting fires.

Under KRE 404(b), "evidence of criminal conduct other than that being tried, is admissibly only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to the character." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994)(internal quotation marks omitted). The Commonwealth argues the August 1st controlled burn request was admissible because it helped to give the jury a complete picture of Puckett's actions on the day of the murder.[14]

---

[14] On appeal, the Commonwealth also argues the controlled burn request is not a bad act at all. They argue the burn request is, instead, evidence that Puckett complied with the rules for conducting burns. While this might be true, this is not what the Commonwealth argued before the trial court when it initially filed its notice

14

Just as a defendant is entitled to present his complete defense, the Commonwealth is entitled "to present a complete, un-fragmented, un-artificial picture of the crime" and investigation. *Commonwealth v. Melton*, 670 S.W.3d 861, 866 (Ky. 2023); *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003). The Commonwealth presented Puckett's controlled burn request as one of many phone calls he made on the night of July 31 and throughout the day on August 1. Puckett's extensive phone records show that, on August 1, in addition to calling the city about the controlled burn, he called Chaudoin, Chaudoin's girlfriend, his mother to ask if she had heard about anything happening at the reservoir, the Marion County Detention Center asking if Pendygraft was being held there, Pendygraft's cellphone to leave several messages, and other individuals to explain his whereabouts the night before and ask about Pendygraft's whereabouts. The phone records, in their entirety, gave the jury a complete picture of the crime, Puckett's actions, and the investigation. The probative value of this evidence outweighs whatever limited prejudice he might have suffered from the jury hearing that he requested permission to conduct a controlled burn. Therefore, the trial court did not abuse its discretion in admitting the evidence.

---

under KRE 404(b). A party cannot raise one argument before the trial court but then argue the opposite on appeal. *Grundy v. Commonwealth*, 25 S.W.3d 76, 84 (Ky. 2000).

## CONCLUSION

Based on the foregoing, the judgment of the Washington Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General